STATE OF CONNECTICUT *v.* KOUNGTHONG
SIRIMANOCHANH
(9352)

DUPONT, C. J., O'CONNELL and FOTI, Js.

Argued September 23, 1991—decision released January 17, 1992

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gerard Eisenman,* assistant state's attorney, for the appellant (state).

*Sandra P. Lax,* with whom, on the brief, was *Anthony Slez, Jr.,* for the appellee (defendant).

DUPONT, C. J. The defendant was charged in a two count information with one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),[1] and one count of risk of injury to a

---

[1] General Statutes § 53a-71 (a) provides in pertinent part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such person is (1) under sixteen years of age . . . ."

General Statutes § 53a-65 (2) defines "sexual intercourse" as "vaginal intercourse, anal intercourse, fellatio, or cunnilingus between persons

child in violation of General Statutes § 53-21.[2] After a jury trial, the defendant was found guilty of what the court considered a lesser included offense of sexual assault in the second degree, namely, sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A).[3] The jury also returned a verdict of guilty of risk of injury to a child. The trial court then granted the defendant's motions for judgment of acquittal because it concluded that there was insufficient evidence to sustain either verdict. The state appeals from the judgment of the trial court rendered following its granting of the defendant's motions.

The state claims that the trial court improperly concluded that there was not sufficient evidence to sustain the convictions. We affirm the judgment of the trial court as to the first count on the alternate ground proffered by the defendant, namely, that sexual assault

regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse, or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. Its meaning is limited to persons not married to each other."

[2] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] General Statutes § 53a-73a (a) provides in pertinent part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

General Statutes § 53a-65 (3) defines "sexual contact" as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person."

General Statutes § 53a-65 (8) defines "intimate parts" as "the genital area, groin, anus, inner thighs, buttocks or breasts."

in the fourth degree is not a lesser included offense of sexual assault in the second degree in this case. We, therefore, do not reach the question of whether there was sufficient evidence to sustain the jury's verdict of guilty of sexual assault in the fourth degree. We reverse the judgment of the trial court as to the risk of injury count and reinstate the jury's guilty verdict because the trial court improperly concluded that there was insufficient evidence to support it.

The state and the defendant presented certain evidence. On March 11, 1989, the complainant, C, who was four years old at the time, went next door to play with a friend, S. C testified that when she knocked on her neighbor's door, the defendant, S's uncle, answered. The defendant asked her to come in "five times until he said it loud enough that I could hear." C went into the house and into the living room, where the defendant told her to kneel down. The defendant then lowered C's pants and underpants to her ankles. In C's words, the defendant then "put my crotch into his crotch," and "his peepee in my peepee." C testified that, at this time, the defendant's penis was standing straight. Afterwards, the defendant got a paper towel, wet it with cold water, and wiped C's crotch with it, which hurt C. The defendant then tried to pull C's pants up, but she pulled them up herself. After the incident, the defendant gave C two cookies and she went home crying.

Regarding her arrival home after the incident, C first testified that she went to the bathroom, it hurt to urinate, and then she told her mother. Later, C testified that she told her mother as soon as she arrived home, and then she went to the bathroom and it hurt to urinate.

The state bolstered the testimony of C by presenting constancy of accusation testimony from several wit-

nesses, including C's parents, the responding police officer, and a nurse. Each witness testified that C told him or her that the defendant had stuck "his peepee in my peepee." The state also presented the results of forensic tests that indicated that antigenic substances present in the defendant's blood and semen were also present in a stain found in the crotch of C's underpants, and that only 4 percent of the population has this blood type. C does not have that blood type. Further tests of the stain identified the presence of spermatozoa, although the tests did not determine whether the spermatozoa were human or animal.

The state also presented the testimony of two physicians who examined C at the hospital on March 11, 1989. Steven Berger, a physician who was on duty in the emergency room when C arrived with her father, testified that he noted that C's vagina appeared normal, with some redness or irritation between the folds of the labia. He found no evidence of forced entry, such as bruising or tearing, and found no evidence of vaginal, anal or oral penetration. He stated that he did not believe that the redness could be caused by penile contact because the nature of the redness required repeated irritation and not a single event.

Avner Herschlag, an obstetrician-gynecologist, also examined C and testified at trial. He similarly found no signs of trauma or penetration of either the vagina or the anus. Herschlag also testified, however, that a sexual assault can "definitely" have occurred even when a doctor cannot find signs of it. He further testified that there could be sexual touching without penetration, and he could not testify with reasonable medical certainty that there had not been any sexual touching.

The defendant presented an extensive defense. First, William Holly, a neighbor of both the defendant and

the victim's family, testified as to three occasions in which he saw C and S playing together with the their pants down or off. He also testified that C had a lively imagination, and wandered away from her home frequently. Finally, he testified that he saw C and S playing together the day of the alleged incident, that he saw C in the days following the incident, and that she acted in a normal manner. In fact, he testified that he even witnessed her going to the defendant's house on several occasions to play with S after the date of the alleged incident.

Holly also testified as a character witness for the defendant, as did the defendant's employer, the defendant's brother and two of the defendant's friends. Each stated that, on the basis of his knowledge of the defendant, he believed that the defendant was not a risk of any kind to any small child. Each also testified that the defendant was of good moral character and had a good reputation in his community.

The defendant's brother also testified regarding the chain of events on the day of the incident. He stated that on the day in question, while he and the defendant were outside washing a car, S and C played together inside the house. They played in the living room with blankets and took off their clothes. Finally, he stated that he had seen C on several occasions since the alleged incident and that she appeared to be acting normally.

The defendant took the stand and testified on his own behalf. He flatly denied any allegation that he in any way sexually assaulted C. He stated that he likes to sleep downstairs in the living room when it is cold because his bedroom upstairs has no heat. The night before the alleged incident he slept between two blankets on the living room floor. When he got up in the morning, he rolled up the blankets and put them

next to a wall in the room. He also testified that that night, while sleeping in his underwear, he had a "wet dream." Finally, he testified that when C came over to play in the afternoon after S and his family had left, he told C that S was not home, he gave her a cookie, she left and he went to sleep.

At the close of the state's case, the defendant moved for judgment of acquittal on both counts. In arguing against the defendant's motion with respect to the first count, the state argued that "even if the jury were not able to [find] sexual assault second beyond a reasonable doubt, they certainly might be able to find the lesser included sexual assault four." The trial court queried whether sexual assault in the fourth degree is a lesser included offense of sexual assault in the second degree and requested both parties to present him with relevant case law. Due to its uncertainty, the trial court denied the defendant's motion for acquittal.

At the close of all evidence, the defendant again moved for judgment of acquittal on both counts. The trial court reserved decision. The trial court then instructed the jury in accordance with an agreement reached by both parties. The instructions included an instruction on the crime of sexual assault in the fourth degree as a lesser included offense of sexual assault in the second degree.[4] With respect to the second count, the trial court instructed the jury only on risk of injury to a child. The jury returned verdicts of not guilty of

[4] Despite the trial judge's previous request for input from the parties on the issue of whether one crime is a lesser included offense of the other, the record does not reflect any discussion of such law. The record does reflect, however, that in a conference off the record between the state, the defendant and the trial judge, the defendant agreed with the state that they are lesser included offenses and consented to such an instruction being given to the jury. The defendant failed to submit its own request to charge. He failed to object to the state's request to charge which did include such an instruction. Finally, he failed to object after the trial court gave the lesser included offense instruction.

sexual assault in the second degree, guilty of sexual assault in the fourth degree, and guilty of risk of injury to a minor.

Immediately thereafter, the trial court granted the defendant's motion for judgment of acquittal as to the risk of injury count,[5] and rendered judgment as to sexual assault in the fourth degree. The defendant was to be sentenced the following day. The next day, the state reargued its opposition to the defendant's motion for a judgment of acquittal on the risk of injury count but the trial court stood by its decision. The defendant then moved for a judgment of acquittal as to the conviction of sexual assault in the fourth degree, and argued that it is not a lesser included offense of sexual assault in the second degree. The defendant also argued that there was insufficient evidence to support the conviction. The trial court granted the defendant's motion for a judgment of acquittal as to the conviction of sexual assault in the fourth degree, because it believed

---

[5] The trial court stated that in the face of "this child playing, playing naked, playing as children do, of adults talking to her parents, et cetera, about it and everything what, in that context, if there were sexual contact, would it mean to say that this impaired the health or morals of a minor . . . . And, I'm going to resolve that difficulty, as I think I must, in favor of the defendant by granting [the motion with respect to the second count.]" In reargument the next day, the trial court further stated that he believed that General Statutes § 53-21, defining risk of injury, was "so clearly vague, so broad, as to defy definition when you talk about, as in this case, any act likely to impair the health or morals of a child. He also reiterated that there was no evidence of the morals of the child. Finally, he ruled that the charge of risk of injury was inextricably linked to, or riding "piggy-back" on, the charge of sexual assault in the second degree, which required proof of sexual intercourse. He stated that where all the evidence at trial was presented to prove the crime of sexual assault in the second degree, and the jury acquitted the defendant of that charge, "then don't ask me to somehow pick out, as a judge on a motion for judgment of acquittal, some evidence to support the charge of risk of injury, because I won't buy into that, I just won't do it." The judge stated that it would be speculation to try to determine what act the jury regarded as an act likely to impair the morals of a minor.

there was insufficient evidence to prove the defendant guilty beyond a reasonable doubt.[6] With the permission of the trial court, the state appealed.

## I

The state claims that the trial court improperly granted the defendant's motion for judgment of acquittal on the first count, in which the jury returned a verdict of guilty of sexual assault in the fourth degree. The state argues that the trial court incorrectly concluded, as a matter of law, that the state failed to meet its burden of proof, that corroboration of C's complaint is required by law, that there was no substantial corroboration of her story, and that there was insufficient evidence to sustain the conviction in the first count. The defendant, however, claims an alternate ground on which the judgment of the trial court may be affirmed.[7] He filed a preliminary statement of issues pursuant to Practice Book § 4013,[8] raising the question of whether sexual assault in the fourth degree is a lesser included offense of sexual assault in the second degree. The state did not brief the issue raised by the defendant as an alternate ground to affirm the trial court's judgment. It did, however, argue in its reply brief that the issue is unpreserved and not reviewable under Practice Book

---

[6] The trial court stated, in granting the motion for a judgment of acquittal, that there was no corroboration of the sexual assault.

[7] The defendant also attempts to raise an issue allegedly relating to prosecutorial misconduct during the state's closing argument, and lists the issue as another alternate ground for sustaining the trial court's judgments of acquittal. The statement of which he complains is claimed by him to require a new trial. This claim is unrelated to an alternate ground to sustain the trial court's judgments, and we, therefore, need not consider it.

[8] Practice Book § 4013 (a) (1) provides in pertinent part: "If any appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within fourteen days from the filing of the appellant's preliminary statement of the issues."

§ 4185[9] or *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

Although the defendant did not object to the trial court's charge to the jury, which allowed the jury to consider sexual assault in the fourth degree as a lesser included offense of sexual assault in the second degree, we consider the issue to have been preserved. The defendant, at the time he argued his motion for judgment of acquittal of the charge of sexual assault in the fourth degree, argued that the charge was not a lesser included offense of sexual assault in the second degree. Thus, the trial court was afforded an opportunity to render a judgment of acquittal on this basis. Furthermore, even if this were not the case, we are not precluded from reviewing an alternative ground on which a judgment may be affirmed, which was not raised at trial. See *Peck* v. *Jacquemin,* 196 Conn. 53, 61–62 n.13, 491 A.2d 1043 (1985).

It is a basic principle in criminal law " 'that an accused is required to defend only against the charge[s] alleged.' " *State* v. *Belton,* 190 Conn. 496, 501, 461 A.2d 973 (1983). "The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the charge[s] against him 'with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . .' *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979) . . . ." *State* v. *Franke,* 199 Conn. 481, 490, 508 A.2d 22 (1986); *State* v. *Peterson,* 13 Conn. App. 76, 84, 534

---

[9] "[Practice Book] Sec. 4185. ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

A.2d 1237 (1987). The constitutional right to notice is satisfied where one or more offenses are lesser than and included in the crime charged in the information because notice of the crime charged includes notice of all lesser included offenses. *State* v. *Castro,* 196 Conn. 421, 429, 493 A.2d 223 (1985); *State* v. *Jacobowitz,* 182 Conn. 585, 591, 438 A.2d 792 (1981).

"The test for determining whether one crime is a lesser included offense of another crime is whether it is possible to commit the greater offense in the manner described in the information or bill of particulars without having first committed the lesser." *State* v. *Hodge,* 201 Conn. 379, 385, 517 A.2d 621 (1986). Proof of a lesser included offense must not require proof of any element that is not needed to commit the greater offense. *State* v. *Castro,* supra, 428; *State* v. *Gonzalez,* 14 Conn. App. 216, 221, 541 A.2d 115 (1988), aff'd, 210 Conn. 446, 556 A.2d 137 (1989). This court will look at the statutes, the information and the bill of particulars, if any, as opposed to the evidence presented at trial, in order to determine what constitutes a lesser included offense of the offense charged. *State* v. *Troynack,* 174 Conn. 89, 96–97, 384 A.2d 326 (1977); *State* v. *Flynn,* 14 Conn. App. 10, 18, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988).

In this case, the state charged the defendant, in the first count, with the crime of sexual assault in the second degree. The state's long form information charged that the defendant "engaged in sexual intercourse with another person and such other person was under the age of sixteen years, in violation of Section 53a-71 (a) (1) of the Connecticut General Statutes." The elements of such an offense are simply that the defendant engage in sexual intercourse with a person who is under the age of sixteen years old. The defendant was convicted, however, of sexual assault in the fourth degree in vio-

lation of General Statutes § 53a-73a (a) (1) (A). The elements of such an offense are that the defendant intentionally subject a person who is under the age of fifteen to sexual contact. General Statutes § 53a-65 (3) defines sexual contact as contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor, or degradation or humiliation of the other person.

In determining whether sexual assault in the fourth degree is a lesser included offense of sexual assault in the second degree,[10] it is helpful to look to cases that analyze our sexual assault statutes in terms of double jeopardy. "In the context of a single trial, double jeopardy analysis is a two-step process. 'First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. . . .' " (Citation omitted.) *State* v. *Mezrioui,* 26 Conn. App. 395, 402, 602 A.2d 29 (1991). "[T]he test to be applied to determine whether there are two offenses or only one, is whether each [statutory] provision requires proof of a fact which the other does not." *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). In *State* v. *Anderson,* 211 Conn. 18, 557 A.2d 917 (1989), the court held that convictions of sexual assault in the first degree and attempted sexual assault in the first degree did not violate the double jeopardy provision, and affirmed convictions of two counts of sexual assault in the first degree, and one count each of kidnapping in the first degree, sexual assault in the third degree, and attempted sexual assault in the first degree. In *State*

---

[10] In *State* v. *Arline,* 25 Conn. App. 653, 658, 596 A.2d 7, cert. granted on other issues, 220 Conn. 924, 598 A.2d 364 (1991), the state conceded that sexual assault in the third degree is a lesser included offense of sexual assault in the first degree. The decision, however, turned on whether the defendant was entitled to a charge on sexual assault in the third degree, and we concluded that he was not because there was no evidence to justify a conviction on that charge.

v. *Blackwell,* 20 Conn. App. 193, 197–98, 565 A.2d 549 (1989), we held that first degree sexual assault and second degree sexual assault are separate offenses. In *State* v. *Snook,* 210 Conn. 244, 266, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989), the court held that convictions of sexual assault in the second degree and sexual assault in the third degree do not violate the double jeopardy prohibition. Similarly, in *State* v. *Hufford,* 205 Conn. 386, 393, 533 A.2d 866 (1987), the court concluded that the crimes of sexual assault in the third degree and sexual assault in the fourth degree are separate offenses. These cases indicate that our courts have repeatedly held that in a single trial, there can be criminal liability under two separate sexual assault statutes, even if the liability arises out of the same act. Our analysis of the statutes and the charging documents in this case leads us to conclude that sexual assault in the fourth degree is not a lesser included offense of sexual assault in the second degree, but is, rather, a separate offense. Sexual assault in the fourth degree requires proof of the element of sexual contact for the purpose of sexual gratification of the actor or degradation or humiliation of the victim, whereas sexual assault in the second degree has no such element. The latter crime requires proof of sexual intercourse whereas the former crime does not. Each crime, therefore, requires proof of an element that the other does not.

The state could have proven all the elements of § 53a-71 (a) (1) and not convicted the defendant of § 53a-73a (a) (1) (A) if it had failed to prove that the defendant had a prohibited purpose. Similarly, the state could have proven all of the elements of § 53a-73a (a) (1) (A) and not convicted the defendant of § 53a-71 (a) (1) if it had failed to prove, for example, that sexual intercourse had occurred. Thus, it was improper for the trial court to instruct the jurors that

they could consider sexual assault in the fourth degree as a lesser included offense of sexual assault in the second degree. It was, therefore, correct to render a judgment of acquittal of the offense of sexual assault in the fourth degree.[11] See *State* v. *Hodge,* supra.

## II

The state also claims that the trial court improperly granted the defendant's motion for a judgment of acquittal on the second count, risk of injury to a child in violation of General Statutes § 53-21. The state argues that the trial court incorrectly concluded that impairment of particular morals of the child is an element of the crime which the state must prove beyond a reasonable doubt, and that the trial court improperly found that there was insufficient evidence to sustain the jury's verdict. We agree, and reinstate the jury's verdict of guilty in the second count.

As a threshold matter, the trial court incorrectly concluded, as a matter of law, that the state had the burden of proving beyond a reasonable doubt that particular morals of C had been impaired by the defendant's conduct. To the contrary, the state need prove merely that the defendant deliberately touched the intimate parts of a child under the age of sixteen in a sexual and indecent manner. *State* v. *Zwirn,* 210 Conn. 582, 588, 556 A.2d 588 (1989); *State* v. *Apostle,* 8 Conn. App. 216, 243, 512 A.2d 947 (1986). It is not necessary that the defendant intend "to injure the child or impair

---

[11] In this case, the state did not seek to add the additional offense of sexual assault in the fourth degree to the information, and, therefore, the trial court never granted permission for such an amendment to the information pursuant to Practice Book § 624. We, therefore, need not reach the question of whether the defendant's agreement that the court should charge the jury on the offense of sexual assault in the fourth degree was tantamount to his "express consent" as provided in Practice Book § 624. See *State* v. *Hahn,* 207 Conn. 555, 564, 541 A.2d 499 (1988); *State* v. *Scognamiglio,* 202 Conn. 18, 21–25, 519 A.2d 607 (1987).

its health"; *State* v. *McClary*, 207 Conn. 233, 240, 541 A.2d 96 (1988); nor is it necessary that the conduct actually injure the child or "impair the health or morals of the victim." *State* v. *Apostle*, supra, 242. Therefore, the absence of proof of a particular injury or an actual impairment of the morals of the minor victim is irrelevant.

"Appellate analysis of a claim of [sufficiency] of the evidence requires us to undertake a twofold task: We must first review the evidence construing it in the light most favorable to sustaining the [jury's] verdict. . . . We then must determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . ." (Internal quotation marks and citations omitted.) *State* v. *Rice,* 25 Conn. App. 646, 650, 595 A.2d 947 (1991).

In *State* v. *Avcollie,* 178 Conn. 450, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980), a trial court judgment of acquittal was reversed and a jury verdict was reinstated. The *Avcollie* court set forth the grounds on which a trial court may render a judgment of acquittal. First, the verdict may be overturned if the manifest injustice is so plain and palpable as to justify a suspicion that the verdict was produced by improper influences in passing on the credibility of witnesses and weighing conflicting testimony. Id., 457. The verdict may also be set aside if it is based on physically impossible conclusions, when testimony is " 'in conflict with indisputable physical facts, the facts demonstrate that the testimony is either intentionally or unintentionally untrue, and [the facts] leave no real question of conflict of evidence for the jury concerning which reasonable minds could reasonably differ.' " Id. Finally, a verdict may be set aside if the jury could not reason-

ably have concluded, from the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. Id., 457–58. It is this latter basis on which we must test the court's action in this case.

A determination of whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." (Citations omitted.) *Jackson* v. *Virginia,* 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); accord *State* v. *Rodriguez,* 200 Conn. 685, 688, 513 A.2d 71 (1986).

The evidence produced at trial sufficiently established that the defendant pulled down the victim's pants and underpants, exposed his penis to the victim, and that there was sexual touching involved. Such conduct by an adult is violative of General Statutes § 53-21. *State* v. *Pickering,* 180 Conn. 54, 64, 428 A.2d 322 (1980). The evidence in this case, therefore, was sufficient to support the jury's guilty verdict and the trial court improperly granted the defendant's motion for a judgment of acquittal of the offense of risk of injury to a child.

The judgment is reversed as to the acquittal of risk of injury to a child and the case is remanded to the trial court with direction to render judgment reinstating the conviction of a violation of General Statutes § 53-21 and to sentence the defendant in accordance with that conviction. The judgment is affirmed as to the acquittal of sexual assault in the fourth degree.

In this opinion the other judges concurred.