## STATE OF CONNECTICUT *v.* ANDREW OWENS
### (13584)

O'CONNELL, SPEAR and HENNESSY, Js.

Argued May 2—decision released August 22, 1995

*Michael J. Isko,* assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Corinne Klatt,* supervisory assistant state's attorney, and, on the brief, *John A. Connelly,* state's attorney, for the appellee (state).

HENNESSY, J. The defendant appeals from the judgment of conviction, following a jury trial, of manslaugh-

ter in the first degree in violation of General Statutes § 53a-55 (a) (3).[1] The defendant claims that the trial court improperly denied his motion to suppress pretrial photographic identifications because both the array and the procedure surrounding the photographic identifications were unnecessarily suggestive.[2] We affirm the judgment of the trial court.

First, the defendant claims that the array was unnecessarily suggestive in that (1) three of the eight photographs could be eliminated because two individuals were smaller and another individual had longer hair, (2) only the defendant had his eyes closed in the pictures, (3) the defendant's photograph was in the lower right corner of the array, and (4) the witnesses had only eight pictures from which to choose. Second, the defendant claims that the identification procedure was unnecessarily suggestive because (1) the witnesses were together when each gave a description of the assailant at the scene, (2) the witnesses were in the same room while they waited to see the array and had an opportunity to speak to one another, and (3) at least one witness was told that the defendant was in the array.

On December 14, 1993, the trial court conducted an evidentiary hearing on the defendant's motion to suppress. The trial court made the following findings of fact in denying the defendant's motion to suppress.

---

[1] General Statutes § 53a-55 (a) provides in pertinent part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] The defendant further contends that the trial court improperly allowed in-court identifications that he claims were tainted by the pretrial photographic identifications. Because we conclude that neither the array nor the identification procedure is impermissibly suggestive, we need not address the question of whether the in-court identifications were nevertheless reliable. *State* v. *Gant*, 231 Conn. 43, 70, 646 A.2d 835 (1994), cert. denied, U.S. , 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995); *State* v. *White*, 229 Conn. 125, 164, 640 A.2d 572 (1994).

There were five identification witnesses: Edward Thomas, Lawrence "Bernard" Saunders, Melissa Minnifield, Kaishawda Minnifield and Shaneeka Counsel. Each witness saw the defendant confront the victim, Ragar J. Overstreet, at 10 Bronson Street in Waterbury. The witnesses saw the defendant argue with Overstreet for several minutes and then pull out a gun, shoot Overstreet and leave. Each witness had a considerable amount of time to observe the events associated with the shooting of Overstreet, and the attention of each was directly focused on the argument between the defendant and Overstreet prior to the shooting.

The court further found that within hours of Overstreet's death each witness made the photographic identification that now forms the basis of the defendant's appeal, that each witness viewed the array alone in a room at the police station and that although an officer was present no one led any witness to a particular photograph. After examining the array, which the state introduced into evidence, the court also found that each of the photographs is a reasonable "look-a-like" and that the photographic exhibit was not so unnecessarily suggestive as to violate the defendant's sixth amendment rights. The trial court concluded that the defendant failed to prove that the challenged pretrial identification procedures gave rise to a very substantial likelihood of irreparable misidentification.

The decision of whether a pretrial identification procedure violates a defendant's due process rights is an ad hoc determination and involves a two-pronged test. *State* v. *White*, 229 Conn. 125, 161, 640 A.2d 572 (1994); *State* v. *Howard,* 221 Conn. 447, 453, 604 A.2d 1294 (1992); see also *State* v. *Arena,* 33 Conn. App. 468, 474, 636 A.2d 398 (1994). The first prong of the test is whether the identification procedure was unnecessarily suggestive. "An identification procedure is unneces-

sarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification." *State* v. *White*, supra, 161–62; *State* v. *Arena*, supra, 473–74; see *Simmons* v. *United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). If the trial court finds the procedure unnecessarily suggestive, it proceeds to the second prong to inquire whether, under the totality of the circumstances, the identification was nevertheless reliable. *State* v. *Theriault*, 182 Conn. 366, 371–72, 438 A.2d 432 (1980). "The defendant bears the burden of proving both that the identification procedures were unnecessarily suggestive and that the resulting identification was unreliable." *State* v. *White*, supra, 162; *State* v. *Payne*, 219 Conn. 93, 106, 591 A.2d 1246 (1991).

"Upon review of a trial court's denial of a motion to suppress, [t]he court's conclusions will not be disturbed unless they are legally and logically inconsistent with the facts. *State* v. *Cofield*, 220 Conn. 38, 44, 595 A.2d 1349 (1991). . . . *State* v. *MacNeil*, 28 Conn. App. 508, 512–13, 613 A.2d 296, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992). The trial court's factual findings will be reversed only if they are clearly erroneous. *State* v. *Jones*, 193 Conn. 70, 79–80, 475 A.2d 1087 (1984); *State* v. *Zindros*, 189 Conn. 228, 244, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984). *State* v. *MacNeil*, supra, 513. Our review of the trial court's action involves a two part procedure. First, where the court's legal conclusions are challenged, we must decide if they are legally and logically correct, and if they are supported by the facts set forth in the memorandum of decision. *State* v. *Zindros*, supra, 238. Second, if the factual basis of the court's decision is challenged, we must determine whether the facts in the memorandum are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly

erroneous. Id. *State* v. *MacNeil,* supra [238]." (Internal quotation marks omitted.) *State* v. *Fields,* 31 Conn. App. 312, 319, 624 A.2d 1165, cert. denied, 226 Conn. 916, 628 A.2d 989 (1993).

"[W]hile it is not this court's function to find facts; *State* v. *Reagan,* [209 Conn. 1, 8, 546 A.2d 839 (1988)]; since the defendant challenges the trial court's factual and legal conclusions, we may look not only to the facts set forth in its memorandum of decision to see if they are legally and logically correct, but to the evidence in the whole record to see if those facts are clearly erroneous. *State* v. *Zindros,* supra, [189 Conn.] 238." *State* v. *MacNeil,* supra, 28 Conn. App. 515. The trial court, in its written memorandum of decision, made detailed factual findings in connection with some, but not all, of the defendant's claims on appeal. Therefore, we will refer to the evidence produced in support of the trial court's ruling as necessary in addressing the defendant's claims. See *State* v. *MacNeil,* supra, 515; *State* v. *Martin,* 2 Conn. App. 605, 614, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985).

I

The defendant claims numerous deficiencies with the array itself. The defendant argues that these deficiencies created an unnecessarily suggestive array and tainted subsequent in-court identifications. We disagree.

A

The defendant first claims that three of the photographs were of men not similar to him in appearance. He claims that two of the men photographed were smaller than he and that one of the men had longer hair.

Our courts have long embraced the fundamental proposition that "[a]ny array composed of different

individuals must necessarily contain certain differences." *State* v. *Vaughn,* 199 Conn. 557, 564, 508 A.2d 430, cert. denied, 479 U.S. 989, 107 S. Ct. 583, 93 L. Ed. 2d 585 (1986); *State* v. *Boscarino,* 204 Conn. 714, 726, 529 A.2d 1260 (1987). Therefore, the defendant's claim must fail if the characteristics of the other individuals in the array "were not so radically different from the defendant's as to make his photograph distinctive." *State* v. *Boscarino,* supra, 727.

After hearing testimony and argument on the motion to suppress and viewing the array, which was admitted as an exhibit, the trial judge specifically found that "each of the photos is a reasonable 'look-a-like' . . . ." Our review of the record, including an examination of the array, reveals that the court's conclusion was not clearly erroneous, as the defendant was depicted with other men of approximately the same age and physical characteristics. See *State* v. *Boscarino,* supra, 204 Conn. 727.

### B

The defendant next claims that the array was unnecessarily suggestive because the defendant was the only person in the array with his eyes closed. This fact, however, cannot be said to have suggested to the witnesses that they should pick the defendant's photograph.

In *State* v. *Fullwood,* 193 Conn. 238, 476 A.2d 550 (1984), our Supreme Court analyzed a claim by a defendant that an array was unnecessarily suggestive because the defendant's picture was the only one in the array that showed the presence of a scar on his head. The court disposed of the claim on the basis that the scar could not "fairly be considered to have been any signal to the witnesses that the defendant was the person whom the police believed to be the perpetrator of the robbery." Id., 248. In the absence of any evidence

that the fact that the defendant's eyes were closed contributed to the selection of the defendant from the array, *Fullwood* controls. The fact that the defendant's eyes were closed in the picture no more signals that the police believed the defendant was the perpetrator of the crime than does the presence of a scar.[3]

## C

The defendant next contends that the array highlighted his photograph because it was in the lower right corner of the array. We disagree. This court disposed of a similar claim in *State* v. *Fields*, supra, 31 Conn. App. 321, in which the defendant argued that the positioning of his photograph in the upper left corner was unnecessarily suggestive. In *Fields*, this court affirmed the trial court's finding that the position of the photograph was not impermissibly suggestive. In this case, the defendant failed to elicit evidence at the suppression hearing that the positioning of the photograph contributed to the selection of the defendant. Furthermore, he fails to offer any explanation as to how this particular positioning suggested that witnesses choose his photograph. *State* v. *Fullwood*, supra, 193 Conn. 238. In the absence of other suggestive factors, the positioning of a photograph in an array does not support a claim that the array is unnecessarily suggestive. The trial court could reasonably have found that the defendant failed to meet his burden of proving that the position of the photograph was suggestive.

## D

The defendant next argues that the array was unnecessarily suggestive because it contained only eight photographs. We are not persuaded.

---

[3] Furthermore, having examined the array, this court notes that another person pictured also had his eyes at least partially closed.

"[T]here is no requirement that a certain number of photographs be shown to a witness." *State* v. *Watson*, 165 Conn. 577, 591, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974); *State* v. *Johnson*, 28 Conn. App. 645, 649, 612 A.2d 799, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992). Our Supreme Court has upheld the validity of arrays containing fewer than eight photographs. *State* v. *White*, supra, 229 Conn. 161 (six photographs); *State* v. *Fullwood*, supra, 193 Conn. 247 (seven photographs). We recognize that a relatively small array may enhance the prejudicial effect of any suggestiveness in the array or the identification procedures. See *State* v. *Williamson*, 206 Conn. 685, 692–93, 539 A.2d 561 (1988); *State* v. *Austin*, 195 Conn. 496, 501, 488 A.2d 1250 (1985) (with numerous photographs suggestive effect diffused and attenuated). This array, however, does not suffer from this ill. As discussed previously, the defendant failed to prove that the array itself was suggestive, i.e., that the defendant stood out from the array like " 'one giant among a group of Lilliputians.' " *State* v. *Hunt*, 10 Conn. App. 404, 408–409, 523 A.2d 514 (1987), quoting *State* v. *Maturo*, 188 Conn. 591, 596, 452 A.2d 642 (1982).

## II

The defendant also argues that the identification procedures were unnecessarily suggestive. We are not persuaded.

### A

The defendant first claims that the identification procedure was suggestive because the witnesses were together when each gave a description of the assailant to the police. The defendant relies on the testimony of one witness, Kaishawda Minnifield, who made general statements at the suppression hearing regarding the events that followed the shooting. Her testimony indi-

cates that all witnesses were present when each gave a description of Overstreet's assailant to the police.[4]

The record lacks sufficient evidence to determine whether the police questioning immediately after the shooting improperly influenced the identification of the defendant from the array. See *State* v. *Milner*, 206 Conn. 512, 537, 539 A.2d 80 (1988); *State* v. *Boscarino*, supra, 204 Conn. 732. The record does not indicate the extent of the descriptions given, and the defendant offered no evidence tending to indicate that anything said during the group questioning improperly suggested that the defendant's photograph should be chosen. See *State* v. *Milner*, supra, 537; *State* v. *Boscarino*, supra, 732. The only specific fact that the defense elicited was that Saunders had seen the man before and knew that he went by the name Akeem. The fact that the other witnesses learned that Akeem was now a suspect could not have influenced their choices in the array because the record contains no evidence that anyone other than Saunders had met the defendant. See *State* v. *Boscarino*, supra, 732. The trial court could reasonably have found that the defendant failed to meet his burden of proving that the gathering of the witnesses

---

[4] Kaishawda Minnifield testified as follows:

"Q. Was everybody all together when the police asked about who did it?

"A. [Yes.]

"Q. And did everybody contribute their own descriptions of the person who did it?

"A. [Yes.]

"Q. And were you all next to each other when you were saying what the guy looked like?

"A. Yes, we all were.

"Q. Did anybody indicate to the police at that time that they were familiar with the person who did it?

"A. [Yes.]

"Q. Who was that?

"A. My cousin Bernard.

"Q. Were you present when he told the police that?

"A. Yes."

at the scene influenced the selection of the defendant from the photographic array.

### B

The defendant also asserts that the procedure was unnecessarily suggestive because the police failed to sequester the potential witnesses while they waited to be questioned, thus giving the witnesses an opportunity to confer about the description of Overstreet's assailant. "While the failure of the police to sequester potential witnesses invites an exchange of information that could taint a subsequent identification, the failure to sequester does not render a subsequent identification impermissibly suggestive where . . . there is nothing that even suggests that [the] identification was influenced by any discussions that may have occurred." *State* v. *Milner,* supra, 206 Conn. 537; *State* v. *Boscarino,* supra, 204 Conn. 732.

Although the defendant did elicit evidence that the witnesses spoke about the murder of Overstreet while they waited for their turns to view the array,[5] the

[5] The only evidence elicited at the suppression hearing regarding this issue supports the trial judge's conclusion that the identification procedures were not impermissibly suggestive. The following is an excerpt of the testimony of Shaneeka Counsel concerning what happened while she was at the police station:

"Q. Did they take you somewhere else? Did they take you to another room?
"A. Yes.
"Q. Were there other people in the room?
"A. Yes.
"Q. Who else was in that room?
"A. Me, Shelly, Shaun, Bernard and Sandy.
"Q. Were you talking to any other people in that room?
"A. Yes.
"Q. What were you talking about?
"A. I don't know.
"Q. Talking about what happened the evening before?
"A. Yes.
"Q. Talking about who you thought did it?
"A. No."

defendant did not present evidence that the witnesses spoke about the description of the assailant. In the absence of any evidence indicating that conversations prior to the viewing of the array influenced the selection of the defendant by the witnesses, this claim must fail. *State* v. *Milner*, supra, 206 Conn. 512.

## C

Finally, the defendant argues that the identification procedures were impermissibly suggestive because the police told one of the witnesses that a picture of the defendant would be in the array. "[C]rime victims presented with a grouping of photographs often surmise that one of the individuals pictured may be a suspect. This does not invalidate the procedure, however, unless the police expressly indicate that a suspect is included in the array. *State* v. *Williams*, [203 Conn. 159, 177, 523 A.2d 1284 (1987)]." *State* v. *White*, supra, 229 Conn. 163. Even if a court finds that the police expressly informed witnesses that the defendant would be in the array, our courts have found the identification procedure unnecessarily suggestive only when other factors exist that otherwise emphasize the defendant's photograph. See, e.g., *State* v. *Williamson*, supra, 206 Conn. 692–93 (police included recurring photographs of defendant in two relatively small arrays); *State* v. *Davis*, 198 Conn. 680, 683, 504 A.2d 1372 (1986) (defendant's photograph displayed only recent arrest date in array and depicted defendant in same clothes as those worn by robber during crime).

The defendant claims that the police informed Melissa Minnifield, Kaishawda Minnifield and Saunders that the perpetrator's photograph was in the array. With respect to Melissa Minnifield and Kaishawda Minnifield, the record is clear that this claim must fail. The record reveals that counsel specifically asked Melissa Minnifield whether the police had told her that the person

who had shot Overstreet was in the array and had asked Kaishawda Minnifield whether the police had told her they had a suspect in the photographs that she had looked at. Each replied, "No."

With respect to Saunders, the evidence does not support the claim that the police expressly told him that a suspect was included in the array.[6] Furthermore, as discussed previously, the defendant failed to prove that his photograph was otherwise emphasized by the police procedures. See *State* v. *Williams*, supra, 203 Conn. 177.

We conclude that each of the claims made by the defendant must fail and that the trial court's denial of the defendant's motion to suppress was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[6] The defendant relies on the following portion of Saunders' testimony:

"Q. Did they make any suggestions to you about looking at the photograph and picking out someone?

"Q. Tell us what they told you?

"A. Who was the guy?

"Q. Pardon?

"A. They said who was the guy?

"Q. They asked you who was the guy?

"Q: Did they tell you you had to pick out someone or that they—

"A: They said pick out the person who did it."