STATE OF CONNECTICUT *v.* MARVIN SALMON
(AC 20778)

Lavery, C. J., and Schaller and Spear, Js.

Argued June 13—officially released October 9, 2001

*Nicholas P. Cardwell,* for the appellant (defendant).

*Nancy L. Chupak,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *John F. Fahey,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Marvin Salmon, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a.[1] On appeal, the defendant claims that the trial court improperly (1) failed to suppress the pretrial photographic identifications of him that were obtained as a result of impermissibly suggestive procedures and were not reliable under the totality of the circumstances, and (2) denied motions for judgment of acquittal at the close of evidence and upon the verdict of guilty. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the afternoon of October 22, 1994, the victim, Claven Hunt, stood at the end of the driveway at 90 Irving Street talking to another resident of the building. A red Subaru drove up to the victim, and a black man with his hair in dreadlocks exited from the vehicle. The man fired a .38 caliber handgun at the victim. The victim then ran and his assailant pursued him. The assailant fired several more bullets; two bullets hit the victim in the back and three bullets hit a drain spout and the doors to a garage. Soon thereafter, the police found the unconscious victim, who was later pronounced dead at Saint Francis Hospital and Medical Center in Hartford.

The red Subaru left the area of the shooting, and an off-duty Hartford police officer, Matt Rivera, noticed it moving quickly through traffic on Blue Hills Avenue. Rivera heard a dispatch that a vehicle matching the description of the red Subaru had been involved in a shooting. Although Rivera did not pursue the vehicle because he was off duty and driving his own car, he

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

informed the dispatcher that while he was driving on Blue Hills Avenue he had noticed a vehicle matching the description of the red Subaru. In addition, Rivera provided the license plate number of the vehicle. The police determined that the vehicle belonged to the defendant's mother and found it parked at the defendant's mother's address.

The Hartford police picked up the vehicle and brought it to the evidence garage. The police dusted the car for latent fingerprints and found a fingerprint that matched that of the defendant. In addition, the police determined that there were traces of gunshot residue from a .38 caliber bullet in the car.

Subsequently, Detective Keith Knight handled the investigation of the shooting. During the course of the investigation, the Hunt family provided Knight with two witnesses to interview, Theodore Owens and Duane Holmes. On the basis of photographic identifications made by those witnesses, Knight was able to obtain an arrest warrant for the defendant, and the defendant was convicted following a jury trial. At trial, the defendant filed a motion to suppress the pretrial identifications made by Owens and Holmes from the photographic arrays. He claimed that the identifications were unnecessarily suggestive and failed to meet the standard of reliability. The court denied the motion to suppress after an evidentiary hearing. The court also denied the defendant's motions for judgment of acquittal made at the close of evidence and upon the jury's return of the verdict of guilty. Additional facts will be provided as necessary.

I

The defendant first claims that the court improperly denied his motion to suppress the pretrial photographic identifications made by Owens and Holmes because they were unnecessarily suggestive and not reliable

under the totality of the circumstances. The defendant claims that the denial of his motion to suppress the pretrial identifications resulted in the denial of his constitutional right to due process. We disagree.

When a trial court denies a motion to suppress a pretrial identification, the standard of review is well established. "Upon review of a trial court's denial of a motion to suppress, [t]he court's conclusions will not be disturbed unless they are legally and logically inconsistent with the facts." (Internal quotation marks omitted.) *State* v. *Davis*, 61 Conn. App. 621, 629, 767 A.2d 137, cert. denied, 255 Conn. 951, 770 A.2d 31 (2001). "[W]e will reverse the trial court's ruling [on evidence] only where there is abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error. . . . Because the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable." (Internal quotation marks omitted.) *State* v. *Bowens*, 62 Conn. App. 148, 159–60, 773 A.2d 977, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001).

"[T]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the

circumstances. . . . To prevail on his claim, the defendant has the burden of showing that the trial court's determinations of suggestiveness and reliability both were incorrect. . . .

"[R]eliability is the linchpin in determining the admissibility of the identification testimony . . . . To determine whether an identification that resulted from an unnecessarily suggestive procedure is reliable, the corruptive effect of the suggestive procedure is weighed against certain factors, such as the opportunity of the [witness] to view the criminal at the time of the crime . . . the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the [identification] and the time between the crime and the [identification]. . . .

"[W]e examine the legal question of reliability with exceptionally close scrutiny and defer less than we normally do to the related fact finding of the trial court. . . . Absent a very substantial likelihood of irreparable misidentification, [w]e are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." (Citations omitted; internal quotation marks omitted.) *State* v. *Reid,* 254 Conn. 540, 554–56, 757 A.2d 482 (2000).

As a threshold matter, we note that the defendant implies that the circumstances surrounding Owens' and Holmes' coming forward as eyewitnesses render the photographic identification unnecessarily suggestive. What makes a photographic identification unnecessarily suggestive, however, is when the police conduct the identification process in a way that emphasizes or suggests the defendant's photograph. *State* v. *Owens,*

38 Conn. App. 801, 811, 663 A.2d 1094, cert. denied, 235 Conn. 912, 665 A.2d 609 (1995). Moreover, as stated previously, the totality of the circumstances surrounding the identification will be examined only if it is determined that the identification process was unnecessarily suggestive. *State* v. *Reid*, supra, 254 Conn. 554. We conclude that the identification procedure was not unnecessarily suggestive.

The defendant claims that the array was unnecessarily suggestive because (1) Owens and Holmes knew that a suspect was included in a photographic array, (2) none of the individuals in the photographs had dreadlocks and one of the witnesses identified the shooter as having dreadlocks, (3) Knight did not adequately question the witnesses before he showed them the photographs, (4) Knight limited the number of photographs for the witnesses to eight and (5) Knight added to the witnesses' statements because he was motivated to arrest the defendant. We will address each of these arguments in turn.

The defendant first argues that the photographic identification procedure was unnecessarily suggestive because Owens and Holmes knew that the suspect's picture was contained in the array. The following additional facts are necessary for our resolution of this claim.

On May 2, 1996, Knight met with Owens at the Osborn Correctional Facility. That day, Knight took a witness statement from Owens and showed him an array of eight photographs. Owens chose the defendant's photograph from the array. Knight testified that he did not tell Owens that he needed to pick someone from the array. On June 11, 1996, one of the brothers of the victim brought Holmes to a Hartford police station. Holmes met with Knight and identified the photograph of the defendant from an array of eight photographs. Knight

testified that he did not suggest a photograph for Holmes to pick.

In *State* v. *Owens*, supra, 38 Conn. App. 811, this court stated that "[e]ven if a court finds that the police expressly informed witnesses that the defendant would be in the array, our courts have found the identification procedure unnecessarily suggestive only when other factors exist that otherwise emphasize the defendant's photograph." Moreover, our Supreme Court has stated explicitly that "little harm is likely to arise where the witness, even without the police comment, would have inferred that the occasion for his being requested to identify someone is that the police have a particular person in mind who has been included among those to be viewed." *State* v. *Austin*, 195 Conn. 496, 500, 488 A.2d 1250 (1985). "When presented with a photographic array by the police, [witnesses] reasonably can surmise that the police may consider one of the persons in the array to be a suspect in the case." *State* v. *Reid*, supra, 254 Conn. 557.[2]

In the present case, the record supports the finding that Owens and Holmes had no actual knowledge that the defendant's photograph was in the array and that they merely believed that the suspect would be included in the photographs shown to them. Indeed, when questioned about how he knew that the defendant was included in the photographic array, Owens testified that he knew the defendant was in the array when he saw the defendant's photograph. Even if the witnesses knew that the defendant's photograph was going to be included in the array of eight photographs, it would have been admissible in the absence of other factors that otherwise emphasized the defendant's photograph.

---

[2] One court has stated that it is "foolish not to assume" that a victim would believe that at least someone in the array is a suspect. *Towles* v. *United States*, 428 A.2d 836, 845 (D.C. 1981).

We conclude that the trial court reasonably could have found that the witnesses' belief that one of the pictures included in the photographic array was the defendant did not render the pretrial identification unnecessarily suggestive.

Next, the defendant claims that because none of the individuals in the photographic array had dreadlocks and a witness described the shooter as having dreadlocks, the photographic identification was unnecessarily suggestive. Our cases uniformly and consistently have held that photographs included in an array are not required to conform precisely to the description given by witnesses. See *State* v. *Banks*, 59 Conn. App. 112, 119–20, 755 A.2d 951, cert. denied, 254 Conn. 950, 762 A.2d 904 (2000). The defendant argues that the array contained only photographs of men without dreadlocks, a physical characteristic that does not conform to the description that the witnesses gave. We fail to see how that factor would cause us to conclude that the procedure was unnecessarily suggestive.

First, the witnesses were able to pick the defendant from the array, notwithstanding that his photograph and the others in the array did not show hair in dreadlocks. Second, had the array contained the defendant's photograph with dreadlocks while the other photographs contained none, there might be an argument that the defendant would stand out from the others. That, however, is not the case here. Third, the defendant points to no case law to support his argument that his photograph and the others in the array must exactly meet the physical description of the suspect. We see no reason why a suspect cannot be included in a photographic array with photographs of other individuals bearing a description similar to, but not exactly the same as, the descriptions given by witnesses to the crimes. This is especially true where, as here, the most prevalent physical difference between the individuals in the photographs and the

witnesses' descriptions was the presence of a certain hairstyle, which can easily change.[3]

The defendant also argues that Knight inadequately questioned the witnesses prior to showing the photographic array to them. We know of no case that requires that the police question witnesses regarding what they know about a suspect or why they came forward with information about a crime. "Absent constitutional barriers, so long as the witness has identified the defendant with reasonable probability, whether the identification is the result of a photo display, a line-up, a show-up or otherwise, the evidence is admissible. The question, in the final analysis, is one of relevancy." *State* v. *Ledbetter*, 185 Conn. 607, 612, 441 A.2d 595 (1981). The defendant's argument that Knight should have asked Owens and Holmes particular questions goes to the weight to be given that evidence rather than to its admissibility. See *State* v. *Gagnon*, 18 Conn. App. 694, 705, 561 A.2d 129, cert. denied, 213 Conn. 805, 567 A.2d 835 (1989). Again, we do not find it necessary to examine the precise circumstances surrounding the photographic identification in the absence of a conclusion that the photographic identification was unnecessarily suggestive.

The defendant next argues that the array was unnecessarily suggestive because it contained only eight photographs. "[T]here is no requirement that a certain number of photographs be shown to a witness." *State* v. *Watson*, 165 Conn. 577, 591, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974); *State* v. *Johnson*, 28 Conn. App. 645, 649, 612 A.2d 799, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992). Our Supreme Court and this court have upheld

[3] Moreover, the degree of specificity of a prior description is a factor for the trier of fact to consider in determining how much weight to assign to such an identification.

the validity of arrays containing fewer than eight photographs. See, e.g., *State* v. *White*, 229 Conn. 125, 161, 640 A.2d 572 (1994) (six photographs); *State* v. *Fullwood*, 193 Conn. 238, 247, 476 A.2d 550 (1984) (seven photographs). We recognize that a relatively small array may enhance the prejudicial effect of any suggestiveness in the array or the identification procedures. See *State* v. *Williamson*, 206 Conn. 685, 692–93, 539 A.2d 561 (1988); *State* v. *Austin*, supra, 195 Conn. 501 (with numerous photographs, suggestive effect diffused and attenuated). The defendant failed to prove that the array itself was suggestive, i.e., "that the defendant stood out from the array like one giant among a group of Lilliputians." (Internal quotation marks omitted.) *State* v. *Owens*, supra, 38 Conn. App. 808. Knight testified that he showed both Owens and Holmes a photoboard containing eight photographs of similar black males numbered from one to eight. Both witnesses positively identified photograph number four as the man he had observed exit from a red vehicle, chase and then shoot the victim.

The defendant's final argument is that Knight added to witness statements to make them more credible. We are not persuaded. This assertion relates to the totality of the circumstances and not to the identification procedure itself. In light of our prior conclusion that the procedure was not unnecessarily suggestive, we do not reach the issue of whether the totality of the circumstances rendered the identification otherwise reliable. We, therefore, do not address this portion of the defendant's claim.

We conclude that nothing in the record indicates that the identification procedure was unnecessarily suggestive. The defendant failed to carry his burden of proving that the identification procedure gave rise to a very substantial likelihood of irreparable misidentification. Because we conclude that the arrays used to identify

the defendant were not unnecessarily suggestive, we need not consider whether the identifications were nevertheless reliable.

## II

The defendant's second claim is that the court improperly denied his motions for judgment of acquittal made at the close of evidence and upon the verdict of guilty. Specifically, the defendant contends that (1) the circumstantial evidence was not sufficient to convict him, (2) there were inconsistencies in testimony, and (3) Owens and Holmes were not credible. We affirm the judgment of the trial court.

A defendant is entitled to a judgment of acquittal in three instances: (1) if the manifest injustice was so plain as to justify the suspicion that prejudice, corruption or partiality influenced the jury or some of its members; (2) when the verdict is based on physically impossible conclusions such as when the testimony conflicts with indisputable physical facts or when the facts demonstrate that the testimony is either intentionally or unintentionally untrue testimony and leave no real question of conflict of evidence for the jury concerning whether reasonable minds could differ; and (3) where the jury could not reasonably have concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Avcollie,* 178 Conn. 450, 457–58, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980), aff'd, 188 Conn. 626, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *State* v. *Sirimanochanh,* 26 Conn. App. 625, 639–40, 602 A.2d 1029 (1992), rev'd on other grounds, 224 Conn. 656, 620 A.2d 761 (1993).

In reviewing the denial of a motion for judgment of acquittal, we employ a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether, from

all of the evidence and the reasonable inferences drawn therefrom, the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt. *State* v. *Watson*, 50 Conn. App. 591, 604, 718 A.2d 497, cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied, 526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999), petition for cert. dismissed, 255 Conn. 953, 772 A.2d 153 (2001).

The defendant first argues that the circumstantial evidence was not sufficient to convict him. We disagree. The probative force of the evidence is not diminished by its circumstantial nature. Id., 604–605. Indeed, deference must be given to the trier of fact, who has had the opportunity to observe the witnesses and to assess their credibility. *State* v. *McCall*, 62 Conn. App. 161, 168, 774 A.2d 143 (2001). The "jury can accept all, part or none of the testimony of a witness." *State* v. *Fullard*, 5 Conn. App. 338, 342, 497 A.2d 1041 (1985). "Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." *State* v. *Morrill*, 193 Conn. 602, 609, 478 A.2d 994 (1984).

In the present case, both direct and circumstantial evidence was presented. The state presented evidence that after hearing gunshots and witnessing a red car speed away, a resident of 115 Irving Street contacted the police and provided a license plate number. She also told the police that a black male was driving the vehicle. The defendant's mother testified that she owned a red Subaru with the same license plate number and that her son used the vehicle. She also testified that she did not use the vehicle on October 22, 1994, and that she had left the key for her son. On the afternoon of the murder, Rivera, the off-duty police officer, was cut off by a red car that was moving quickly through traffic in the vicinity of the shooting. He subsequently heard a dispatch that a red

car with a similar license plate number was involved in a shooting. He provided the red car's license plate number to the dispatcher because of the similarity to the one reported. Later that day, he went to the residence of the defendant's mother and identified the car as the one that had cut him off that afternoon. Robert O'Brien, from the Connecticut state police forensic science laboratory, testified that gunshot residue was found in the red Subaru. Thomas O'Brien from the forensic services division of the department of public safety testified that the defendant's fingerprints were found in the same red Subaru.

Owens and Holmes testified that they knew the victim. Owens testified that he witnessed the murder from a gas station located across the street from where the victim was shot. Owens also testified that he knew the defendant was Jamaican because he called the victim a "blood clot," which is a derogatory term used by Jamaicans. Holmes was parked on Irving Street when he saw a red Subaru drive up Irving Street and stop in front of the driveway at 90 Irving Street. He saw the driver, a black male whom he positively identified as the defendant, exit from the vehicle and shoot the victim. In addition, both Owens and Holmes positively identified the red Subaru as the vehicle that they had seen that day on Irving Street and positively identified the defendant from photographic arrays. Another witness, Delroy Coomes, testified that the victim indicated to him that the victim had had a confrontation with a person in a red car. This witness also testified that he was familiar with the red car because the defendant used to visit someone who lived on the third floor of the building at 90 Irving Street. On the basis of the evidence set forth and the inferences reasonably drawn therefrom, we conclude that the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt.

The defendant next argues that there were inconsistencies and discrepancies in the testimony. We do not know, on the record before us, the weight that the jury gave to the testimony of the witnesses or of the circumstantial evidence. As we previously discussed, however, "[i]t is the [jury's] exclusive province . . . to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Marsala*, 44 Conn. App. 84, 96, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997).

Furthermore, the court fully instructed the jury on the issue of credibility. The court articulated the various inconsistencies in the testimony of Knight, Owens and Holmes. In addition, the defendant had an opportunity to cross-examine fully the witnesses. It is not necessary for us to review the various inconsistencies and contradictions in the evidence as alleged by the defendant. " 'Such credibility issues are typical grist for the [trier of fact's] mill.' " *State* v. *Castro*, 60 Conn. App. 78, 80–81, 758 A.2d 470, cert. denied, 255 Conn. 912, 763 A.2d 1038 (2000). We, therefore, conclude that the jury reasonably could have credited the witnesses' testimony despite the inconsistencies and discrepancies regarding certain events surrounding the murder.

The defendant's final claim is that Owens and Holmes were not credible. Specifically, he argues that he is entitled to a judgment of acquittal because it was physically impossible for Owens or Holmes to identify the shooter one and one-half years after the crime was committed. This court has found, however, that a two year time period between a crime and an identification did not render the identification unreliable. See *State* v. *McClendon*, 45 Conn. App. 658, 666, 697 A.2d 1143 (1997), aff'd, 248 Conn. 572, 730 A.2d 1107 (1999). Here, Owens and Holmes had ample opportunity to see the

shooter, the conditions for identification were favorable in that it was daylight and the incident occurred in their direct line of sight, and both witnesses demonstrated certainty in identifying the defendant from the photographic arrays. We recognize that the identification in *McClendon* was also by the victim and therefore was face to face. Nevertheless, under the facts of this case we conclude that the defendant was not entitled to a judgment of acquittal on the basis of a physical impossibility.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] This analysis assumes, arguendo, that the inability to identify someone is an example of a physical impossibility. Most of the cases cited by the parties include an actual physical impossibility, i.e., a brick wall obstructing the line of vision.