JAMES THOMAS *v.* COMMISSIONER
OF CORRECTION
(AC 32462)

DiPentima, C. J., and Bear and Sheldon, Js.

Argued November 29, 2012—officially released March 19, 2013

*Melissa Toddy*, assistant public defender, for the appellant (petitioner).

*Adam E. Mattei*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Gerard P. Eisenman*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SHELDON, J. In this certified appeal from the habeas court's denial in part of his amended petition for a writ of habeas corpus, in which he challenged his incarceration pursuant to a judgment of conviction on the charge of murder in violation of General Statutes § 53a-54a (a), the petitioner claims that the court erred in rejecting his claim that his counsel in his murder trial rendered ineffective assistance by failing to call a certain witness

to testify in that trial.[1] We affirm the judgment of the habeas court.

In examining the petitioner's claims on the direct appeal of his conviction, this court set forth the following facts, which were adopted by the habeas court. "Teresa Alers knew both the [petitioner] and Henry Goforth, with whom she sold narcotics. She saw the two men together on the evening of October 7, 1999. A dispute ensued that night over money Goforth allegedly owed the [petitioner]. When the [petitioner] demanded payment, Goforth indicated that he had no money. At approximately 6 a.m. on the morning of October 8, 1999, Goforth's body was found under a stairwell outside building fifteen of the P.T. Barnum apartment complex (complex) in Bridgeport. Detective Tijuana Webbe of the Bridgeport police department arrived shortly thereafter and observed wounds to the face, head, neck and chest of the body.

---

[1] In its memorandum of decision, the habeas court noted: "There are other issues raised by the petitioner in his petition, however, the trial in the habeas court revolved around [the petitioner's] statement [that he would not have been convicted of murder if his trial counsel had called Luis Sostre to testify]. In general, the petitioner alleges prosecutorial impropriety and *Brady* violations for not disclosing exculpatory information, ineffective representation on appeal by [his trial counsel], ineffective cross-examination of the witnesses, etc. None of these allegations are found to have any merit and lack any evidence to support them. To the contrary, however, the petitioner and the respondent [the commissioner of correction] did agree that the petitioner's right to file for sentence review should [be] and [thus] was restored." The petitioner challenges the habeas court's ruling as to some of these other issues, which were summarily rejected by the court. Because the record does not reveal the factual or legal bases for those rulings, we cannot conclude that the court erred in that regard.

The petitioner also challenges various evidentiary rulings made by the habeas court on the ground that the evidence that he sought to admit was necessary for the court's consideration of his ineffective assistance of counsel claim. Because we conclude that the petitioner has failed to show that his trial counsel's failure to call Sostre as a witness likely did not affect the outcome of his criminal trial, and thus that the petitioner's purported third party liability defense was not a viable option, his related claims of evidentiary error also must fail.

"That afternoon, Alers, [Mabel] Persons and two other females were seated in a vehicle across from a mini mart in the complex. They observed the [petitioner] toss a bag into a dumpster adjacent to the mini-mart. After the [petitioner] left, all four headed to the dumpster. Alers testified that they thought that the bag contained narcotics. When they opened the dumpster, they saw the bag on top of a pile of cardboard. Persons opened the bag, looked inside and screamed, 'He ain't going to get away with this.' Persons took the bag to a police officer nearby, who forwarded it to Webbe. Among the items Webbe discovered in the bag were a handle with a broken blade and a broken knife that had 'Goforth' written on it.

"Medical examiner Arkady Katsnelson performed an autopsy, which revealed multiple stab wounds to Goforth's body. Notably, Katsnelson found the blade of a knife, which had penetrated Goforth's left lung, lodged completely inside the body. Karen Lamy, a criminalist with the state forensic science laboratory, testified that the blade recovered from Goforth's body and the handle recovered from the bag found in the dumpster were parts of the same knife. The [petitioner] subsequently was arrested and charged with murder in violation of § 53a-54a (a)." *State* v. *Thomas*, 98 Conn. App. 384, 385–86, 909 A.2d 57 (2006), cert. denied, 281 Conn. 906, 916 A.2d 47 (2007). The jury found the petitioner guilty of murder, on which the court sentenced him to a term of sixty years incarceration. Id., 386. This court thereafter affirmed the petitioner's conviction. Id., 389.

On October 6, 2004, the petitioner filed a petition for a writ of habeas corpus. By way of an amended petition filed on May 13, 2009, the petitioner alleged, inter alia, that his trial counsel, attorney H. Jeffrey Beck, was ineffective in failing to call Luis Sostre to testify at the petitioner's criminal trial. The petitioner claims that if Sostre, who allegedly had seen three other persons

commit the murder, had testified at his trial, he probably would not have been convicted of that offense.

After a multiday trial on the petitioner's habeas petition, the habeas court issued a memorandum of decision denying the petition in part[2] on March 5, 2010. In its memorandum of decision, the court explained its ruling as follows: "The petitioner, in his trial on the habeas petition, did not present the testimony of . . . Sostre that he now says would have been the key to an acquittal. It is true that . . . Sostre gave an initial statement to the police that he had seen three men, other than the petitioner, murder the victim . . . Goforth. This statement formed the basis of the [third] party culpability defense that the petitioner and his trial defense counsel had initially intended to use. Notwithstanding . . . Sostre recanted this statement and indicated that he had lied to the police when he said that he had witnessed the murder. Needless to say, this recantation, on the eve of trial, 'took the wind out of the sails' of the [third] party culpability defense. [The] [p]etitioner now asserts that his trial defense counsel was ineffective for not calling . . . Sostre to the witness stand anyway.

"[Attorney] Beck testified that he felt that . . . Sostre had no credibility and the jury would have believed that he had lied to the police. As a result, he saw no advantage to be gained by putting this witness on the stand. [Attorney John B.] Watson, testifying as an expert witness, opined that calling Sostre could not have hurt the petitioner in his criminal trial and that it was something that any competent defense counsel would have done. Moreover . . . Watson offered that the prior inconsistent statement to the police should have been

---

[2] The court granted the petition as to count five pertaining to sentence review.

used as a *Whelan* statement.[3] This is precisely the type of hindsight that *Strickland* [v. *Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] warns against. In 2010, as this decision is being written, we know that the petitioner has been convicted and sentenced to the maximum sentence. It is hard to see how the result could have been any worse. The argument that trying something because it could not hurt is an insufficient basis to grant habeas relief. The burden of proof rests with the petitioner to show that the action that he claims should have been taken would result in a reasonable probability that the outcome would have been different, i.e., an acquittal." The habeas court concluded: "[T]his court must find the strategic decisions of counsel to be within the acceptable range of performance. There is, therefore, neither deficient performance nor prejudice." The habeas court, accordingly, denied in part the petitioner's petition for a writ of habeas corpus, but thereafter granted the petitioner's petition for certification to appeal.

We begin with the applicable standard of review and the law governing ineffective assistance of counsel claims. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

[3] In *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), our Supreme Court adopted a rule permitting "the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination."

"[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [supra, 466 U.S. 686]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, supra, 687, this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677–78, 51 A.3d 948 (2012). A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier. *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 832–33, 950 A.2d 1220 (2008).

On appeal, the petitioner claims that the habeas court improperly determined that Beck's failure to call Sostre as a witness was not deficient and that he was not deprived of a fair trial by reason of that deficiency.[4] We disagree.

---

[4] Although the petitioner frames his claim on appeal as encompassing Beck's failure to investigate adequately and the resulting erroneous decision to abandon the third party culpability defense, the habeas court did not

"[T]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 64, 951 A.2d 520 (2008). Here, the petitioner did not present any evidence at the habeas trial that would prove that there was any likelihood that the outcome of his criminal trial would have been different if Beck had called Sostre to testify. As the habeas court noted, the petitioner did not call Sostre as a witness at the habeas trial, and it is thus not possible to find that his testimony at the criminal trial would have aided the petitioner. More fundamentally, without Sostre's testimony at the habeas trial, it is not discernible whether he would have testified in accordance with his initial, exculpatory statement to the police or if he would have admitted that he had fabricated that statement as he did on the eve of trial. Without his testimony, the habeas court could not evaluate him as a witness, nor could it assess the likely impact of his testimony. Accordingly, the habeas court properly found that the petitioner had not established prejudice. See *Townsend* v. *Commissioner of Correction*, 116 Conn. App. 663, 668, 975 A.2d 1282 (insufficient showing of prejudice where petitioner offered sole testimony regarding exculpatory witness because court had no opportunity to evaluate testimony or credibility of claimed witness), cert. denied, 293 Conn. 930, 980 A.2d 916 (2009); *Andrews* v. *Commissioner of Correction*, 45 Conn. App. 242, 247–48, 695 A.2d 20 (prejudice cannot be demonstrated with regard to trial counsel's alleged failure to interview potential witnesses where petitioner fails to call those witnesses

discuss the adequacy of Beck's investigation. Because the third party culpability defense would have been predicated on Sostre's testimony, which had been fabricated, Beck's investigation or lack thereof bears no moment on the ineffective assistance of counsel claim.

to testify at habeas trial or to offer any other proof that their testimony would have been favorable to him at criminal trial), cert. denied, 242 Conn. 910, 697 A.2d 364 (1997); see also *Nieves* v. *Commissioner of Correction*, 51 Conn. App. 615, 622–24, 724 A.2d 508 (petitioner's failure to present evidence showing what witnesses who were not called by petitioner would have said if called to testify was fatal to his claim), cert. denied, 248 Conn. 905, 731 A.2d 309 (1999); *Taft* v. *Commissioner of Correction*, 47 Conn. App. 499, 504–505, 703 A.2d 1184 (1998) (insufficient showing of prejudice where petitioner failed to present evidence showing that witness' testimony would have been consistent with prior statement and changed outcome of trial).

Even if Sostre had testified in accordance with his initial statement to the police that three other individuals committed the murder, or if that statement had been admitted as a *Whelan* statement,[5] the petitioner presented no evidence at the habeas trial that he could have corroborated that assertion. In fact, evidence was presented that one of the individuals implicated by Sostre's initial statement was incarcerated at the time of the murder at issue in this case. In light of that undisputed evidence, which seriously undermines the credibility of Sostre's initial statement, it strains the bounds of reason to suggest that Beck's failure to call him as a witness prejudiced the petitioner's defense at the criminal trial. We thus conclude that the habeas court did not err in denying in part the petitioner's amended petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[5] See footnote 3 of this opinion.