******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAMON MAHON *v.* COMMISSIONER OF
CORRECTION
(AC 36161)

DiPentima, C. J., and Sheldon and Norcott, Js.

*Argued November 20, 2014—officially released May 12, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Vishal K. Garg*, with whom, on the brief, was *Damon
A. R. Kirschbaum*, for the appellant (petitioner).

*Brett R. Aiello*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*,
state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

SHELDON, J. The petitioner, Damon Mahon, appeals from the judgment of the habeas court, *Cobb. J.*, denying his amended petition for a writ of habeas corpus, challenging his conviction of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the first degree as an accessory in violation of General Statutes §§ 53a-70 (a) (1) and 53a-8, conspiracy to commit sexual assault in the first degree in violation of General Statutes §§ 53a-70 (a) (1) and 53a-48 (a), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), accessory to risk of injury to a child in violation of General Statutes §§ 53-21(a) (1) and (2) and 53a-8, kidnapping in the second degree in violation of General Statutes § 53a-94 (a), and conspiracy to commit kidnapping in the second degree in violation of General Statutes §§ 53a-94 (a) and 53a-48 (a). On appeal, the petitioner claims that the habeas court improperly rejected his claim of ineffective assistance of counsel. Specifically, the petitioner claims that the habeas court improperly concluded that he was not prejudiced by his trial counsel's allegedly deficient advice during pretrial plea negotiations.[1] We affirm the judgment of the habeas court.

The following factual and procedural history is necessary to our resolution of the petitioner's appeal. In 2004, following a jury trial, the petitioner was convicted and sentenced to thirty-five years of incarceration, suspended after eighteen years, followed by a ten year period of probation. This court affirmed the petitioner's conviction on direct appeal. See *State* v. *Mahon*, 97 Conn. App. 503, 905 A.2d 678, cert. denied, 280 Conn. 930, 909 A.2d 958 (2006). On October 2, 2009, the petitioner filed a pro se petition for a writ of habeas corpus, collaterally attacking the judgment of conviction. On February 7, 2012, the petitioner, represented by appointed counsel, filed the amended petition at issue in this appeal, in which he alleged that he was denied his constitutional right to effective assistance of counsel as a result of his trial counsel's deficient performance. The petitioner alleged that his trial counsel failed to counsel him adequately about the advisability of accepting the state's plea offer. More specifically, the petitioner claimed that his trial counsel "failed to understand the nature of the risk of injury to a minor charge . . . [c]ounsel did not inform the petitioner that—even if the jury acquitted him of all other charges—he still faced exposure to a ten year sentence for risk of injury alone." The petitioner claimed that but for his counsel's deficient advice, he would have accepted the plea offer, forgone trial and received a more favorable sentence.

A trial on the habeas petition was held on April 23, 2012. The petitioner presented testimony from his trial counsel, Attorney Nicholas Cardwell, the prosecutor in the petitioner's criminal trial, Herbert Carlson, and the

petitioner's aunt, Michelle Mahon. The petitioner also testified. On August 16, 2013, the habeas court issued a written memorandum of decision denying the petition for a writ of habeas corpus. In its decision, the court found that the petitioner had failed to establish any prejudice resulting from Cardwell's representation. On the basis of the evidence presented at the habeas trial, the court found the following facts:

"Prior to trial, the parties engaged in plea negotiations. . . . The state had a strong case against the petitioner as both principal and accessory in the commission of the victim's sexual assault based on the eyewitness testimony of the victim, who knew the [petitioner] and testified that he and his codefendant sexually assaulted her, another eyewitness who saw the victim and assailants together, the petitioner's statement, which placed him at the scene of the assault and detailed his activities, and evidence from the car, including semen found on the backseat. The petitioner's exposure on the charges was approximately 100 years.

"The final offer to the charge of sexual assault in the first degree, offered in September, 2003, and agreed to by the pretrial judge and the state, was twelve years incarceration, suspended after six years, followed by probation. On October 14, 2003, the petitioner rejected the offer on the record. Despite the rejection, the court gave the petitioner two additional weeks to further consider the offer and discuss it with his family. The notes in the state's attorney's file reflect that the petitioner, who was a citizen of Jamaica, rejected the offer because he would be deported if he accepted it. The petitioner would not accept a plea of more than six months incarceration.

"The petitioner's defense was that although he was present when the victim was assaulted, he did not have intercourse or any contact with her. The petitioner claimed that the victim consented to having intercourse with his codefendant, and that he did not participate or aid in his codefendant's actions.

"The petitioner's theory of his defense was consistent with the petitioner's statement to the police, in which he stated the following. The petitioner was driving his car with the codefendant in the vehicle when they saw the victim, who they knew, walking down the street. The petitioner asked the victim if she wanted a ride, and she said she did, and got in the car. After stopping at the victim's cousin's house, the petitioner and the codefendant asked the victim, who was thirteen years old, if she and her boyfriend had had sex. The petitioner drove the car to a secluded area, and the codefendant got in the backseat with the victim. The petitioner got out of the car and, standing on the passenger side of the car, watched his codefendant have intercourse with the victim and saw him ejaculate in the car. The petitioner had his erect penis outside of his pants during

this time, in a way that the victim could see it. The petitioner did not have intercourse with the victim. The petitioner and codefendant then brought the victim home."

The court further stated that "[b]ased on the credible evidence at the habeas trial, the court finds that the petitioner has failed to prove prejudice as to his claim. In particular, the petitioner has failed to prove that it is reasonably probable that the petitioner would have accepted the plea offer, but for counsel's actions. Despite the fact that he faced serious charges and the state had a very strong case against him that included the eyewitness testimony of the victim, who knew him, and faced potential exposure of 100 years, the petitioner rejected the plea offer of twelve years incarceration, suspended after six years, followed by probation. The court does not credit the petitioner's testimony that had Attorney Cardwell advised regarding the risk of injury charge or the ten year exposure it carried, he would have accepted the plea offer. Rather, the court finds that the reason the petitioner rejected the plea offer was his concern that he would be deported if he was convicted of the sexual assault charge. The petitioner asserted his right to a trial in an attempt to avoid deportation and remain in the United States, not because he received deficient advice from his counsel."

On the basis of these facts, the court determined that the petitioner had failed to prove he was prejudiced by Cardwell's allegedly deficient performance, and thus concluded that the petitioner could not prevail on his ineffective assistance of counsel claim. Thereafter, the habeas court granted the petition for certification to appeal, and this appeal followed.

On appeal, the petitioner challenges the court's determination that he was not denied the effective assistance of counsel. The petitioner argues that his trial counsel, Cardwell, was incompetent, in that he failed to recognize, or to advise the petitioner, that the petitioner's signed statement to the police, admitting to being present at the time of the assault and exposing his penis to the thirteen year old victim, was "compelling evidence" in support of a conviction of risk of injury to a child.[2] Thus, he claims, the defense theory at trial—that the victim engaged in consensual sex with his codefendant while the petitioner watched with his erect penis exposed—was no defense at all, and not a viable alternative to the plea offer. He claims that had he been advised properly as to the nature of the risk of injury charge, he would have accepted the state's plea offer, forgone trial, and avoided the greater sentence imposed thereafter. Accordingly, he argues, the habeas court erred in determining that he rejected the plea offer to avoid deportation. We are not persuaded.

As a preliminary matter, we set forth the standard of review and legal principles governing ineffective

assistance of counsel claims. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Thomas* v. *Commissioner of Correction*, 141 Conn. App. 465, 470, 62 A.3d 534, cert. denied, 308 Conn. 939, 66 A.3d 881 (2013).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . The United States Supreme Court, long before its recent decisions in *Missouri* v. *Frye*, U.S. , 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and *Lafler* v. *Cooper*, U.S. , 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), recognized that the two part test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to ineffective assistance of counsel claims arising out of the plea negotiation stage." (Citation omitted; internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 792, 93 A.3d 165 (2014).

"A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Thomas* v. *Commissioner of Correction*, supra, 141 Conn. App. 471. "Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings . . . and plea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. . . . For counsel to provide effective assistance, he must adequately investigate each case to determine relevant facts. . . . This court has held that [b]ecause a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction." (Citations omitted; internal quotation marks omitted.) *Dennis* v.

*Commissioner of Correction*, 134 Conn. App. 520, 531, 39 A.3d 799 (2012).

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri* v. *Frye*, supra, 132 S. Ct. 1409; see also *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012) (to show prejudice in lapsed plea case, petitioner must establish: "[1] it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and [2] the trial judge would have conditionally accepted the plea agreement if it had been presented to the court"), cert. denied sub nom. *Arnone* v. *Ebron*, U.S. , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013).

To prevail on a claim of ineffective assistance of counsel, both prongs of the *Strickland* test must be satisfied. *Thomas* v. *Commissioner of Correction*, supra, 141 Conn. App. 471. Accordingly, the habeas court "can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong . . . ." Id.

At the habeas trial, Attorney Carlson, the prosecutor in the petitioner's criminal trial, testified regarding the plea offer. Carlson testified that the petitioner was first represented by Attorney Carlton Hume, with whom he initially engaged in the plea negotiations. Carlson testified that he had made a notation in his file reflecting his conversations with Hume, wherein he had written that the petitioner "could not or would not take a plea if it included more than six months of actual incarceration because he would be deported." Aside from that notation, Carlson could not recall any other discussions concerning the petitioner's reasons for rejecting the plea offer.

The petitioner testified that he had understood that acceptance of the plea offer would result in his deportation. The petitioner claimed, however, that deportation was not a factor in his decision to reject the plea offer. On that subject, he testified that, although he did not want to be deported, it "[d]idn't really matter" to him because he had grown up in Jamaica, and thus he would be able to have contact with and support from his family

even if he were deported. The petitioner further testified that Cardwell did not explain the risk of injury charge to him or inform him that he could be convicted of that charge even if the jury believed that he did not have intercourse with the victim. He claimed that Cardwell had advised him that he had a winnable case. He further claimed that had he understood the charges and the strength of the evidence against him, he would have accepted the plea offer.

Cardwell also testified at the habeas trial. Cardwell could not recall his conversations with the petitioner regarding the plea offer, but he testified that it is his usual practice to advise his clients concerning their charges and their sentencing exposure in the event of an unfavorable outcome at trial. He also testified that it was his belief that the sexual assault charge against the petitioner was central to the jury's determination, because, in his view, if the jury disbelieved the victim's account of the incident, the petitioner "might have a favorable result" at trial.

In considering this testimony, the habeas court found that "Attorney Cardwell . . . never told the petitioner that the case was 'beatable' or guaranteed a favorable result." The court noted that it found Cardwell's testimony to be credible and persuasive. The court did not credit the petitioner's testimony that had he been advised as to the risk of injury charge, and his sentencing exposure on that charge, that he would have accepted the plea offer. Rather, the court found that the petitioner rejected the plea offer because he was concerned that he would be deported if he accepted it. In light of this evidence, the court concluded that the petitioner had failed to prove that he would have accepted the plea offer but for the alleged deficiency of his counsel's advice.

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous." (Internal quotation marks omitted.) *Hardison* v. *Commissioner of Correction*, 152 Conn. App. 410, 423, 98 A.3d 873 (2014). "It is well established that a reviewing court is not in the position to make credibility determinations. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 117 Conn. App. 120, 126, 977 A.2d 772, cert. denied, 294 Conn. 904, 982 A.2d 647 (2009).

The petitioner claims that he rejected the plea as a result of Cardwell's advice, and thus the court erred in concluding that he did so to avoid deportation. The court, however, heard the petitioner's testimony to that effect and did not credit it. Because the petitioner's

claim is squarely based on a rejection of the court's determination on an issue of credibility, he cannot prevail.[3] See id. On the basis of our review of the record, we conclude that the court's factual findings and legal conclusions are supported by the record. We therefore conclude that the court did not err in concluding that the petitioner failed to prove prejudice under the *Strickland* test. Accordingly, we cannot conclude that the habeas court erred in denying the petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner also claims that his trial counsel's performance during the pretrial plea negotiations fell below objectively reasonable standards. We do not address the performance prong of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), on appeal because the habeas court did not address the performance of the petitioner's counsel; see *Small* v. *Commissioner of Correction*, 286 Conn. 707, 723 n.8, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008); nor was the habeas court required to do so. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Aillon* v. *Meachum*, 211 Conn. 352, 362, 559 A.2d 206 (1989), quoting *Strickland* v. *Washington*, supra, 697; *King* v. *Commissioner of Correction*, 73 Conn. App. 600, 602–603, 808 A.2d 1166 (2002) ("[b]ecause both prongs of the *Strickland* test must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong"), cert. denied, 262 Conn. 931, 815 A.2d 133 (2003).

[2] General Statutes (Rev. to 2001) § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[3] The petitioner also argues that the habeas court's finding, as recited in its memorandum of decision, that he would not accept a plea of more than six months incarceration, was based on unreliable hearsay evidence and that it reflects a misinterpretation of immigration law, which mandates the deportation of any person convicted of an aggravated felony. Thus, the petitioner claims, the court's ultimate conclusion as to his "mental state" and rejection of the plea offer is clearly erroneous. The argument lacks merit. First, the petitioner did not object to the introduction of the challenged evidence at trial and, thus, the court was free to rely upon it. Second, the petitioner himself testified that he believed acceptance of the plea offer would result in deportation and that he did not want to be deported. It is immaterial whether he or anyone else may have believed that a six month sentence would exempt him from that fate.