******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# MARVIN SALMON *v.* COMMISSIONER OF CORRECTION
## (AC 39095)

DiPentima, C. J., and Prescott and Mihalakos, Js.

*Syllabus*

The petitioner, who had been convicted of the crime of murder in connection with the shooting death of the victim, sought a writ of habeas corpus, claiming that his pretrial counsel, C, had provided ineffective assistance by failing to advise him during pretrial plea negotiations of the existence of H, a second eyewitness to the murder, and that he was prejudiced by counsel's deficient performance. After the murder, H and another eyewitness, O, provided statements to the police and identified the petitioner in a photographic array as the individual who had shot the victim. A probable cause hearing was held at which the state presented testimony from a number of witnesses, including O, but H did not testify, and the state did not elicit any testimony regarding him, nor was he mentioned by any of the testifying witnesses. C also did not mention H in a letter that he wrote to the petitioner summarizing the events of the hearing. Thereafter, the petitioner was extended two plea offers during a pretrial conference. C wrote the petitioner a letter in which he summarized the offers and stated that O was the only eyewitness available to the state and that there were serious questions as to his reliability and credibility. The petitioner subsequently rejected the plea offers and, following a jury trial during which he was represented by C's law partner, N, the petitioner was convicted of murder. At his habeas trial, the petitioner testified that C never advised him of the existence of H during pretrial plea negotiations. The habeas court rendered judgment denying the habeas petition and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The habeas court abused its discretion in denying the petition for certification to appeal; the resolution of the petitioner's underlying claim involved issues that were debatable among jurists of reason and could have been resolved by a court in a different manner, as the habeas court made a clearly erroneous factual finding relating to the issue of whether C had rendered deficient performance by failing to advise the petitioner of H's existence during pretrial plea negotiations.

2. The habeas court improperly concluded that the petitioner failed to establish that C had provided ineffective assistance of counsel: that court's factual finding that C must have informed the petitioner of H's existence during plea negotiations was clearly erroneous, as there was no evidence in the record to support that finding and, despite the language of C's second letter to the petitioner, the habeas court relied on speculative testimony of N and the prosecutor, who were not involved in the case during pretrial plea negotiations and testified at the habeas trial only as to their respective general practices; moreover, because it was unclear whether, in the absence of the habeas court's erroneous factual finding, it would have credited the petitioner's testimony that C never told him about H, and because questions of credibility are for the fact finder to decide, the case had to be remanded for a new trial on that issue.

3. The petitioner's claim that he was prejudiced by C's allegedly deficient performance during plea negotiations was not reviewable; the habeas court, which found that the petitioner had failed to show deficient performance by C, did not address prejudice or make any factual findings as to whether the petitioner had demonstrated a reasonable probability that he would have accepted one of the plea offers had C afforded him effective assistance of counsel, and because the question of prejudice presents a mixed question of fact and law, this court was unable to determine whether the petitioner was prejudiced by C's alleged deficient performance without the habeas court's complete factual findings concerning prejudice.

Argued September 7—officially released December 19, 2017

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Fuger, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Reversed; new trial.*

*Naomi T. Fetterman*, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

MIHALAKOS, J. The petitioner, Marvin Salmon, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly concluded that he failed to establish the ineffectiveness of his pretrial counsel. For the reasons set forth herein, we agree with the petitioner, and conclude that the habeas court abused its discretion in denying the petition for certification to appeal. We further conclude that the habeas court made a clearly erroneous factual finding that underlies its determination that pretrial counsel did not render deficient performance. We also determine that the habeas court did not make a determination regarding whether any assumed deficient performance prejudiced the petitioner. Accordingly, we reverse the judgment of the habeas court and remand the case for a new trial.

The record discloses the following facts and procedural history. Our prior decision on the petitioner's direct appeal in *State* v. *Salmon*, 66 Conn. App. 131, 133–34, 783 A.2d 1193 (2001), cert. denied, 259 Conn. 908, 789 A.2d 997 (2002), set forth the following facts: "During the afternoon of October 22, 1994, the victim, Claven Hunt, stood at the end of the driveway at 90 Irving Street [in Hartford] talking to another resident of the building. A red Subaru drove up to the victim, and a black man with his hair in dreadlocks exited from the vehicle. The man fired a .38 caliber handgun at the victim. The victim then ran and his assailant pursued him. The assailant fired several more bullets; two bullets hit the victim in the back and three bullets hit a drain spout and the doors to a garage. Soon thereafter, the police found the unconscious victim, who was later pronounced dead at Saint Francis Hospital and Medical Center in Hartford.

"The red Subaru left the area of the shooting, and an off-duty Hartford police officer, Matt Rivera, noticed it moving quickly through traffic on Blue Hills Avenue. Rivera heard a dispatch that a vehicle matching the description of the red Subaru had been involved in a shooting. Although Rivera did not pursue the vehicle because he was off duty and driving his own car, he informed the dispatcher that while he was driving on Blue Hills Avenue he had noticed a vehicle matching the description of the red Subaru. In addition, Rivera provided the license plate number of the vehicle. The police determined that the vehicle belonged to the [petitioner's] mother and found it parked at the [petitioner's] mother's address.

"The Hartford police picked up the vehicle and

brought it to the evidence garage. The police dusted the car for latent fingerprints and found a fingerprint that matched that of the [petitioner]. In addition, the police determined that there were traces of gunshot residue from a .38 caliber bullet in the car.

"Subsequently, Detective Keith Knight handled the investigation of the shooting. During the course of the investigation, the [victim's] family provided Knight with two witnesses to interview, Theodore Owens and Duane Holmes. On the basis of [a photographic identification made by Owens on May 2, 1996], Knight was able to obtain an arrest warrant for the [petitioner]."

During a pretrial conference on November 20, 1998, the petitioner was extended two plea offers. On December 11, 1998, the petitioner formally rejected both plea offers. In February, 2000, following a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a (a), as enhanced pursuant to General Statutes § 53-202k for using a firearm. Thereafter, the court sentenced the petitioner to a total effective term of forty-five years of incarceration. This court affirmed the petitioner's conviction on direct appeal. See id., 131.

Thirteen years later, on July 17, 2013, the self-represented petitioner filed a petition for writ of habeas corpus. On November 2, 2015, the petitioner, represented by appointed counsel, filed the amended petition operative in this appeal. In the sole count of the amended petition, the petitioner alleged that his constitutional right to the effective assistance of counsel was violated because his pretrial counsel, Attorney Donald Cardwell, failed to inform him of Holmes, the second eyewitness, during plea negotiations.[1] Specifically, the petitioner alleged that Attorney Donald Cardwell's performance was deficient, in that he: "[1] failed to meaningfully explain a plea offer to the petitioner; [2] failed and neglected to properly and adequately advise the petitioner of the desirability of a plea offer; [3] failed to adequately inform and advise the petitioner with regards to the relative strength of the state's case and the possibility of success at trial; and [4] affirmatively misadvised the petitioner regarding the desirability of proceeding to trial." The petitioner further claimed that "but for [his] counsel's deficient performance, the result of [his] criminal proceedings would have been different and more favorable to [him]."

The habeas trial was held on March 3, 2016. Following the trial, the habeas court, *Fuger, J.*, denied the habeas petition in an oral decision in which it concluded that the petitioner failed to establish that Attorney Donald Cardwell had provided ineffective assistance of counsel.[2] Thereafter, the petitioner, pursuant to General Statutes § 52-470, petitioned the habeas court for certification to appeal the following issue: "Whether the petitioner's constitutional right to the effective assistance of counsel was violated." The habeas court

denied the petition for certification to appeal, and this appeal followed. Additional facts and procedural history will be set forth as necessary.

## I

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal from the denial of his amended petition for a writ of habeas corpus with respect to his claim of ineffective assistance of counsel. We agree with the petitioner.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 821–22, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

As discussed subsequently in part II A of this opinion, we conclude that the habeas court made a clearly erroneous factual finding relating to the issue of whether Attorney Donald Cardwell rendered deficient performance by failing to advise the petitioner of Holmes' existence during pretrial plea negotiations. Because the resolution of the petitioner's underlying claim involves issues that are debatable among jurists of reason and could have been resolved by a court in a different manner, we conclude that the habeas court abused its dis-

cretion in denying his petition for certification to appeal from the denial of his amended petition for a writ of habeas corpus.

## II

We now turn to the petitioner's substantive claim that the habeas court improperly concluded that he had failed to establish the ineffectiveness of his pretrial counsel. Specifically, he argues that (1) Attorney Donald Cardwell rendered deficient performance in that he failed to advise the petitioner of Holmes' existence during pretrial plea negotiations, and (2) he was prejudiced by Cardwell's deficient performance.

As a preliminary matter, we set forth our standard of review and the legal principles governing ineffective assistance of counsel claims. "[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution." (Internal quotation marks omitted.) *Thomas* v. *Commissioner of Correction*, 141 Conn. App. 465, 471, 62 A.3d 534, cert. denied, 308 Conn. 939, 66 A.3d 881 (2013). "The United States Supreme Court, long before its recent decisions in *Missouri* v. *Frye*, 566 U.S. 134, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and *Lafler* v. *Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), recognized that the two part test articulated in *Strickland* . . . applies to ineffective assistance of counsel claims arising out of the plea negotiation stage. *Hill* v. *Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) . . . ." (Citation omitted; internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 792, 93 A.3d 165 (2014); see also *Duncan* v. *Commissioner of Correction*, 171 Conn. App. 635, 647, 157 A.3d 1169 ("[i]t is well established that the failure to adequately advise a client regarding a plea offer from the state can form the basis for a sixth amendment claim of ineffective assistance of counsel"), cert. denied, 325 Conn. 923, 159 A.3d 1172 (2017).

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, the habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"As enunciated in *Strickland* v. *Washington*, supra, 466 U.S. 687, this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The [petitioner's] claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Thomas* v. *Commissioner of Correction*, supra, 141 Conn. App. 470–71. The court, however, "can find against a petitioner . . . on either the performance prong or the prejudice prong, whichever is easier." Id., 471.

A

The petitioner first claims that the habeas court improperly concluded that Attorney Donald Cardwell's performance was not deficient. Specifically, he argues that the "record is bereft of support for [the court's] finding" that Attorney Donald Cardwell informed him of Holmes' existence during pretrial plea negotiations. We agree that the court's factual finding was clearly erroneous.

The following additional facts are relevant to our analysis of this claim. On May 2, 1996, Owens gave a statement and identified the petitioner in a photographic array. On the basis of Owens' identification, Detective Knight obtained an arrest warrant for the petitioner on May 28, 1996. On June 11, 1996, Holmes gave a statement and identified the petitioner in a photographic array. A probable cause hearing was conducted on April 22, 1998. At the hearing, the prosecution presented testimony from Detective Knight, Officers Clayton Winslow and Tracey Carter, Owens, Delray Coomes and Gary Rakestrau.[3] Holmes did not testify at the probable cause hearing, the state did not elicit any testimony regarding him, and he was never mentioned by any of the testifying witnesses. On April 24, 1998, Attorney Donald Cardwell wrote a letter to the petitioner, summarizing the events of the probable cause hearing: "I am providing you with copies of all the reports and statements given to me by the assistant state's attorney on the morning of the [probable cause] hearing and ask that you review all of these documents carefully as we will have to go over them together when we next meet."

During a pretrial conference on November 20, 1998, the petitioner was extended two plea offers. The court,

*Clifford J.*, offered the petitioner twenty-five years for a guilty plea to murder. Alternatively, Assistant State's Attorney Rosita Creamer offered the petitioner thirty years for a guilty plea to manslaughter in the first degree with a firearm. On November 22, 1998, Attorney Donald Cardwell wrote a letter to the petitioner summarizing the events of the pretrial conference: "I gave our view of the evidence and submitted copies of the photographs of the scene which support our contention that no one could get a clear view of the individual's face from the gas station where [Owens] testified he was standing at the time of this incident. This is important to the defense as *there is only one eyewitness available to the state* and there are serious questions as to his reliability and credibility.

"The state on the other hand has tied in your mother's vehicle and, in addition, has evidence of your thumb print being found in the car as well as gun powder residue. While this does not place you in the automobile at the time of the shooting it allows the state to argue that since you were in the automobile at some time and since gun powder residue was found in the automobile, *the witness who identifies you* can be believed. This becomes the critical question for the jury.

"Judge Clifford, who is the presiding Judge, agreed with me that the case is defensible. At the same time, we all know from experience that a jury is absolutely unpredictable so that every trial involves a certain amount of risk.

"If the state stays with the charge of murder Judge Clifford will give you the absolute bottom of the range which is 25 years. You should keep in mind that a conviction would most likely result in a sentence of around 50 years so that the offer is approximately [one half] of your exposure. In response to my question as to whether the state would change the charge from murder to manslaughter, the prosecutor said she would do so but that she would then add a charge of possession of a weapon and want 25 years on the manslaughter charge and 5 years on the weapon for a total effective sentence of 30 years. I see absolutely no gain to you from this change in charge as you would most likely do 85 [percent] of your time under either charge and 85 [percent] of 25 years is obviously preferable to 85 [percent] of 30 years.

"I plan to meet with you prior to . . . your next court date at which time we will discuss the contents of this letter carefully and fully. At the same time I wanted you to have this information in advance so that you would have an opportunity to consider it before our next meeting. Please understand that I am not making any recommendation at this time. I am simply communicating to you what was discussed at the pretrial conference." (Emphasis added.)

On December 8, 1998, Attorney Donald Cardwell met with the petitioner and reviewed the contents of the November 22, 1998 letter "to make further sure that he understood" the available plea offers. On December 11, 1998, the petitioner formally rejected both plea offers. Attorney Donald Cardwell's brother and law partner, Attorney Nicholas Cardwell, represented the petitioner at his criminal trial. On January 20, 2000, during voir dire, the state filed its witness list, disclosing both Owens and Holmes. On January 25, 2000, the petitioner filed a motion for disclosure and production, which, in addition to general discovery requests, also sought information concerning Owens and Holmes. Attorney Donald Cardwell passed away in 2002.

At his habeas trial, the petitioner testified that in November, 1998, Attorney Donald Cardwell informed him of the two available plea offers. The petitioner further testified that they discussed the offers as well as his possible sentence exposure if he continued to trial and was found guilty. The petitioner explained that he rejected the plea offers because "[Donald] Cardwell advised [him] that the state didn't have a strong case against [him] . . . [and] [t]here was only one eyewitness, and he [wasn't] credible . . . ." The petitioner testified that he never was advised of the existence of Holmes during plea negotiations, and that he could only recall Cardwell discussing three witnesses: Owens, Rakestrau and Donna McNair.[4] The petitioner averred that he did not become aware of Holmes' statement and identification until January, 2000, after Attorney Nicholas Cardwell had taken over his representation.

Attorney Nicholas Cardwell also testified at the petitioner's habeas trial. Because the underlying criminal matter concluded in 2000, he could not recall many specifics of his firm's representation of the petitioner and had no recollection as to what was in the petitioner's file when he took over his representation. Furthermore, he stated that he could not recall providing the petitioner with Holmes' statement in January, 2000. Cardwell spoke generally regarding his firm's criminal trial practices and policies, including how he would review the state's file and make copies pursuant to the state's attorney's office "open file policy." He also testified that it was his practice to review all of the reports, police statements, witness statements and anything else that could be relevant to the trial. Cardwell further testified that he could not "imagine trying a murder case without reviewing all the evidence and giving the defendant a complete understanding of the risks, and the strengths, the weaknesses so that the defendant could make an intelligent decision; and also what the likelihood would be if you lost in terms of a sentence."

Assistant State's Attorney John Fahey, the prosecutor in the petitioner's criminal trial, testified regarding his office's discovery practices and procedures. Fahey

stated that the Hartford Police Department sent all documents related to their investigation to the prosecutor's office. Fahey described Creamer, the assistant state's attorney handling the matter during pretrial, as "the most thorough attorney in that office at that point in terms of securing everything possible . . . ." He attested that Holmes' statement, which was taken on June 11, 1996, would have been disclosed to defense counsel "the minute it came in." Fahey further stated that there were no surprise witness statements disclosed on the eve of trial.

Attorney Kenneth Simon, a qualified expert in criminal defense matters in state court, also testified at the habeas trial as the petitioner's expert. Attorney Simon testified as to the standard of care with respect to defending criminal cases. He also testified regarding the "open file policy" and how discovery was handled in the judicial district of Hartford at the time of the petitioner's criminal trial. Simon stated that he had reviewed the arrest warrant, search warrants, criminalistics reports, police reports, witness statements and the various letters from Attorney Donald Cardwell to the petitioner prior to testifying. Simon then opined as to the adequacy of the information conveyed by Cardwell to the petitioner in the November 22, 1998 letter. He testified that "in [his] view there was information that [he] was given that is not referenced in that letter that looks like a fairly important piece of evidence." Simon, however, also acknowledged that he was looking at the letter in a "vacuum" and could not be sure without seeing what Attorney Donald Cardwell had in his file at the time.

The habeas court acknowledged the evidentiary issues that this case presented, given that Attorney Donald Cardwell had passed away, stating that "[t]he only other person who can testify as to what . . . may have transpired between the two men would be [the petitioner], and of course, he testified in a somewhat inconsistent manner." The court then concluded: "[I]t's clear to me, *based upon the testimony of [Attorney] Nicholas Cardwell of how he conducted his practice being a partner with [Attorney] Donald Cardwell*, when I look at [the November 22, 1998 letter], I do not believe that to be the entirety of the advice offered to [the petitioner] by Attorney Donald Cardwell. I believe that [Attorney] Donald Cardwell amplified upon that letter. Consequently, this court concludes that [the petitioner] was, in fact, properly advised. The plea offer was clearly explained. [The petitioner] was eminently aware of the relative strength of the state's case, and this court is convinced that [the petitioner] . . . had been notified by his lawyers of the risk of taking the case to trial." (Emphasis added.)

We next set forth the legal principles that govern ineffective assistance of counsel claims in the context

of plea negotiations. "Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings . . . and plea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. . . . For counsel to provide effective assistance, he must adequately investigate each case to determine relevant facts. . . . This court has held that [because] a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction." (Internal quotation marks omitted.) *Mahon* v. *Commissioner of Correction*, 157 Conn. App. 246, 253, 116 A.3d 331, cert. denied, 317 Conn. 917, 117 A.3d 855 (2015).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) *Helmedach* v. *Commissioner of Correction*, 168 Conn. App. 439, 453, 148 A.3d 1105, cert. granted, 323 Conn. 941, 151 A.3d 845 (2016).

"[C]ounsel performs effectively and reasonably when he . . . provides a [defendant] with adequate information and advice upon which the [defendant] can make an informed decision as to whether to accept the state's plea offer. . . . We are mindful that [c]ounsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness . . . . Accordingly, [t]he need for recommendation depends on countless factors, such as the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial compared to the guilty plea . . . whether [the] defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform [his] plea decision." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, supra, 169

Conn. App. 828.

With the foregoing facts and legal principles in mind, we now review the habeas court's conclusion that Attorney Donald Cardwell did not render deficient performance. The record indicates that Holmes gave his statement to Detective Knight on June 11, 1996, twenty-three months prior to the probable cause hearing, and twenty-nine months prior to the pretrial conference at which the plea offers were made. Attorney Donald Cardwell, however, never referenced Holmes in his April and November, 1998 letters to the petitioner. Importantly, the November 22, 1998 letter, which was written while the two plea offers were pending, specifically states that "there is only one eyewitness available to the state and there are serious questions as to his reliability and credibility." Despite the language of this letter, the habeas court relied on the speculative testimony of Attorneys Nicholas Cardwell and Fahey, who were not involved in the case during pretrial plea negotiations and could testify only as to their respective general practices. Because there is no evidence in the record to support the finding that Attorney Donald Cardwell informed the petitioner of Holmes' existence during plea negotiations and the habeas court relied on the speculative testimony of Attorneys Nicholas Cardwell and Fahey, we conclude that this factual finding was clearly erroneous. See *Rosa* v. *Commissioner of Correction*, 171 Conn. App. 428, 434, 157 A.3d 654 ("[a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" [internal quotation marks omitted]), cert. denied, 326 Conn. 905, 164 A.3d 680 (2017); see also *State* v. *Smith*, 40 Conn. App. 789, 801, 673 A.2d 1149 ("[i]f the trial court's conclusions or findings of fact rest on speculation rather than on sufficient evidence, they are clearly erroneous"), cert. denied, 237 Conn. 915, 675 A.2d 886, cert. denied, 519 U.S. 873, 117 S. Ct. 191, 136 L. Ed. 2d 128 (1996).

Although we conclude that the court's affirmative finding of fact that Attorney Donald Cardwell must have told the petitioner about Holmes' statement in November, 1998, was clearly erroneous, that error does not necessarily compel a conclusion that the petitioner met his burden of persuasion that Attorney Donald Cardwell never informed him about the existence of Holmes as a witness.[5] Although the petitioner testified that Attorney Donald Cardwell never told him about Holmes, it is unclear whether, in the absence of the habeas court's erroneous factual finding, it would have credited the petitioner's testimony that he was never told about Holmes. Because questions of credibility are for the finder of fact, we conclude that the case must be remanded for a new trial on this issue.

We now turn to the prejudice prong of *Strickland.* The petitioner claims that he was prejudiced by Attorney Donald Cardwell's deficient performance because he would have accepted one of the available plea offers had he been properly advised during pretrial plea negotiations. At oral argument before this court, the petitioner's counsel argued that habeas court's oral decision addressed only the performance prong and stopped short of addressing prejudice. We agree and, accordingly, do not address the prejudice prong of *Strickland* on appeal because the habeas court did not address prejudice as it relates to Attorney Donald Cardwell's allegedly deficient performance during plea negotiations.

As we previously stated, *Strickland* requires that a petitioner prove both deficient performance and resulting prejudice, and thus a court can find against a petitioner on either ground. See *Thomas* v. *Commissioner of Correction*, supra, 141 Conn. App. 471. In the present case, the habeas court concluded that the petitioner had failed to satisfy the performance prong of *Strickland*, and, therefore, it did not need to determine whether the petitioner also had failed to satisfy the prejudice prong. See id.; see also *Elsey* v. *Commissioner of Correction*, 126 Conn. App. 144, 162, 10 A.3d 578 ("[b]ecause both prongs . . . [of the *Strickland* test] must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong" [internal quotation marks omitted]), cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011).

We note that the habeas court made certain factual findings that tend to indicate that the petitioner could have accepted a plea offer prior to or during trial.[6] The habeas court, however, did not make any findings as to whether the petitioner had demonstrated "a reasonable probability [that he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." (Internal quotation marks omitted.) *Mahon* v. *Commissioner of* Correction, supra, 157 Conn. App. 253, quoting *Missouri* v. *Frye*, supra, 566 U.S. 147; see also *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012) (to show prejudice in lapsed plea case, petitioner must establish: "[1] it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and [2] the trial judge would have conditionally accepted the plea agreement if it had been presented to the court"), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). Because the question of prejudice presents a mixed question of fact and law; *Thomas* v. *Commissioner of Correction*, supra, 141 Conn. App. 470; we cannot determine whether the petitioner was prejudiced by

Attorney Donald Cardwell's alleged deficient performance without the habeas court's complete factual findings concerning prejudice.

In sum, we conclude that the habeas court abused its discretion when it denied the petitioner's petition for certification to appeal because the resolution of the petitioner's underlying claim involves issues that are debatable among jurists of reason and a court could resolve the issues in a different manner. We further conclude that the habeas court made an erroneous factual finding underlying its conclusion that Attorney Donald Cardwell did not render deficient performance during pretrial plea negotiations. We therefore remand the case to the habeas court for a new trial.[7]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] In the amended petition, the petitioner also initially alleged the ineffective assistance of his trial counsel, Attorney Nicholas Cardwell. That count, however, was withdrawn on March 3, 2016.

[2] Although the court discussed the performance and prejudice prongs of *Strickland* v. *Washington*, 466 U.S. 668, 686–87, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), in its statement of law, it never expressly addressed either prong in its analysis of the petitioner's claim. Upon our review of the habeas trial transcript, we conclude that the court, in finding that that the petitioner had been "properly advised" by Attorney Donald Cardwell during plea negotiations, implicitly held that the petitioner failed to establish that Attorney Donald Cardwell rendered deficient performance. We are unable to conclude, however, that the court made an implicit finding as to prejudice.

[3] Rakestrau was an eyewitness to the October 22, 1994 incident. At the probable cause hearing, he testified to hearing gunshots and to seeing a "black gentleman getting inside a red car." Rakestrau, however, did not get a clear view of the suspect and, therefore, was unable to identify the petitioner when he was interviewed by Detective Knight. Attorney Donald Cardwell viewed Rakestrau as a favorable witness for the defense.

[4] McNair was a witness to the October 22, 1994 incident. McNair stated that she heard four to five gunshots, after which she saw two black males in a red car traveling at a high rate of speed on Irving Street. She provided a license plate number that was only one digit different from that of the red Subaru.

[5] In similar contexts, our courts have been mindful that a lack of proof as to fact "A" does not establish the existence of fact "B." See *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 245 n.19, 963 A.2d 943 (2009) ("difference between the failure to draw a particular conclusion and the embrace of an *opposite* conclusion"[emphasis added]); *DiVito* v. *DiVito*, 77 Conn. App. 124, 138–39, 822 A.2d 294 (fact finder may not predicate finding of fact simply on disbelief of evidence to contrary), cert. denied, 264 Conn. 921, 828 A.2d 617 (2003).

[6] The petitioner testified that he was not aware that the plea offers remained open after he had rejected them. The petitioner testified that after receiving Holmes' statement he told Attorney Nicholas Cardwell that he wanted to take the plea offer, but Cardwell told him that the offer had expired and that his only choice was to proceed with the trial. The petitioner further testified that he was not aware that he could negotiate plea offers during the trial. Although the petitioner professed his innocence throughout the underlying criminal matter and the habeas trial, he testified that he would have pleaded guilty because he had seen a lot of innocent people go to trial and be found guilty. The court, however, heard the petitioner's testimony to that effect and did not credit it.

The petitioner's testimony was contradicted by the testimony of both Attorneys Nicholas Cardwell and Fahey. Attorney Nicholas Cardwell testified that he could not recall giving the petitioner Holmes' statement during voir dire in January, 2000. He also testified that it was the petitioner's decision to go to trial. He could not recall the petitioner ever "express[ing] any interest in [him] approaching the state with any plea negotiations . . .

either prior to or during the course of the trial." Cardwell testified that if the petitioner had told him that he wanted to plead guilty, he would have taken that information to Fahey and that given his firm's practice and the "murder blitz" that was taking place in Hartford at the time, he could not imagine telling the petitioner that the offer had expired and that the state was not willing to make another offer.

Fahey testified that although the state's plea offers were rejected and withdrawn, he extended Attorney Creamer's offer to Attorney Nicholas Cardwell on the eve of the trial, subject to the approval of Judge Clifford. Fahey further testified that he likely kept this offer open throughout trial given that his office was trying "murder case after murder case after murder case," and his belief that the jury would not find the petitioner guilty. Specifically, Fahey described the petitioner's case as one of the weakest cases of his career.

[7] We note that a sua sponte motion for articulation, pursuant to Practice Book § 60-5, is unavailable as Judge Fuger retired from the bench in January, 2017.

_____